STONE v. O'NEAL.—90 S. W. (2d) 548.

Middle Section. September 7, 1935.

Petition for Certiorari denied by Supreme Court, February 15, 1936.

J. D. Murphree and E. T. Nance, both of Shelbyville, for plaintiff in error J. C. Stone.

B. D. Kingree, Sr., and B. D. Kingree, Jr., both of Shelbyville, for defendant in error Frank O'Neal.

CROWNOVER, J.  This was an action for damages by the plaintiff in error, J. C. Stone, for personal injuries sustained by him when he was run over by an automobile belonging to the defendant in error, Frank O'Neal.  The defendant denied liability.

The case was tried by the judge and a jury. It resulted in a verdict and judgment for the defendant, Frank O'Neal.

The plaintiff in error's (J. C. Stone's) motion for a new trial was overruled, and he has appealed in error to this court, assigning errors, which are, in substance, that the court erred in rendering the judgment, because:

(1) There is no material evidence to support the verdict of the jury.

(2) B. D. Kingree, Sr., an attorney for the defendant, made an improper and prejudicial argument in respect to the perjury of the plaintiff.

(3) The jury, in deliberating upon their verdict, improperly took into consideration the fact that the plaintiff had instituted this suit on the pauper's oath.

(4) B. D. Kingree, Sr., an attorney for the defendant, made an improper and prejudicial argument in respect to the plaintiff instituting this suit upon the pauper's oath.

The facts of the case are as follows: On Saturday evening, April 15, 1933, the minor son of the defendant took the defendant's automobile to go riding with a group of young friends, with the defendant's permission. The son, Charles O'Neal, picked up two other boys and went out to the home of some young ladies with whom they had an engagement. They took the young ladies and rode around with them. They drove to Murfreesboro and back, and had started to take the young ladies to their homes, on the Shelbyville-Wartrace highway. When they had gone outside of Shelbyville, the defendant's son, who had been driving the car, asked one of the other young men, Billy Temple, to do some driving. Young O'Neal and the young lady who was sitting beside him on the front seat got into the rear seat, and young Temple and the girl who was with him got on the front seat, young Temple doing the driving.

Young Temple drove on toward the young ladies' home. As he was driving up a slight rise and around a curve, he saw an automobile on the same side of the road as he was driving on. He checked his speed, thinking that the car was turning around, and slowed down to about fifteen miles per hour. As he got near the car, he saw that it was parked on the highway. He saw that there was not enough room to pass on the right-hand side of the road, so he pulled toward the left and started around the car.

The car was parked on the road, at an angle, with the lights shining across the road into a field. The right front wheel was near the center of the road and the rear left wheel was near the edge of the road.

As young Temple drove around on the left side, a bump was felt by the occupants of the car, and they looked back and saw a

man lying in their pathway, which they had just traversed, a few feet beyond the rear of the parked car. Temple brought the car to a stop, and all of the young people ran back to the man, and learned that he was the plaintiff, Stone.

They found that he was unconscious and bleeding profusely. As they bent over him, they heard a woman's voice calling from the car: "Mr. Stone, Mr. Stone."

They looked up and saw her getting out of the car. The woman was Ruby Falk, and she came over and kept crying, "Mr. Stone, Mr. Stone."

The boys asked the women if she was with Stone, and, at first, she told them that he had picked her up. Later she admitted to them that she was with him.

The boys picked up Stone and carried him to the hospital. They then carried the Falk woman to her home.

Later the boys brought the plaintiff's son back with them to get plaintiff's car. The young people testified that he came out to the scene of the accident and got a pistol out of the plaintiff's car and put it in his pocket.

The plaintiff's version of the accident differs from that of the young people. He states that on the night of the accident he had left the store of his son in Shelbyville with several orders of groceries to be delivered out on the Wartrace road. He said he had gone out to the point where the accident occurred and found that he had a flat tire. He got out of his car, obtained his pump, and was stooping over to pump up the tire, when a car, traveling very fast, came around his car and struck him, and dragged him, rendering him unconscious, and inflicting serious bodily injuries.

He said that there was enough room on the right-hand side of the road (the shoulders of the road were about six feet wide) for the car to have passed on that side.

He stated that he was alone, and that he did not have a pistol in the car with him. His son denied also that he had taken any pistol from his father's car.

All of the young people in the defendant's car testified that they had looked into the plaintiff's car, and that there were no groceries in the car. They further testified that the pump was not on the ground outside the car, but was inside the plaintiff's car after the accident.

The young people also testified that there was broken glass on the ground near where the plaintiff was lying. They testified that the cars did not touch, and that no glass was broken on either of them, but that the glass was from a broken bottle.

1. We are of the opinion that the plaintiff in error's (Stone's) first assignment of error, that there was no material evi-

dence to support the verdict, must be overruled. There was a conflict in the evidence, and the jury decided in favor of the defendant.

█ "If there is any material evidence to support a verdict, concurred in by the trial judge, it will not be disturbed by an appellate court." National Life & Acc. Ins. Co. v. Yates, 16 Tenn. App., 344, 347, 64 S. W. (2d), 524, 526.

█ 2. We are of the opinion that the plaintiff in error's second assignment, that B. D. Kingree, Sr., an attorney for the defendant, made an improper and prejudicial argument in respect to the perjury of the plaintiff, must be overruled also. The language complained of is as follows:

"When the plaintiff swore that this Falk woman was not in the car with him, he swore falsely, and committed deliberate perjury. Five credible witnesses testified she was out there with him in the car, and that they carried her home, and the little Morgan girl says that after the accident, the plaintiff came to her home and asked if she knew the woman that was in the car with him, and she said she did not and he then asked her if she thought she would know her if she were to see her again, and she said, 'Yes.' Defendant does not deny what the little Morgan girl says. He has sworn falsely, and ought to be indicted for perjury. I have practiced law at this Bar for more than thirty years, and I do not believe that you will ever find evidence more false and brazen than that of the plaintiff when he swore that Falk was not in the car with him."

The attorney for the plaintiff objected, but the court overruled his objection. Thereupon the defendant's attorney went on:

"I repeat that the defendant (plaintiff) is guilty of perjury, and the evidence in this case shows beyond a reasonable doubt that he is guilty. He is a prejurer, and you know, Gentlemen of the Jury, that what I say is true."

The attorney for the plaintiff again objected, but was again overruled.

The court charged the jury as to the rules of evidence, particularly as to the credibility of witnesses.

The credibility of the plaintiff's testimony was continually before the jury. The plaintiff introduced character witnesses, and defendant, after the plaintiff denied having the Falk woman in the car with him, introduced the occupants of his car, all of whom testified that she was an occupant of the plaintiff's car and that they carried her home after the accident.

We are of the opinion that the defendant's attorney was within his rights in commenting on the discrepancy in the testimony, though he may have been intemperate in the choice of his phraseology. However, it is immaterial in this instance.

█ The latitude of argument of counsel is controlled by the presiding judge in the exercise of a sound judicial discretion. Ferguson v. Moore, 98 Tenn. (14 Pickle), 342, 344, 39 S. W., 341;

Kizer v. State, 80 Tenn. (12 Lea), 564; East Tennessee, etc., R. Co. v. Gurley, 80 Tenn. (12 Lea), 46, 55; 1 Michie's Digest, 662.

Although the trial court ordinarily has complete discretion in refusing a new trial for the misconduct of counsel in argument, yet, in the case where evidence has been repeatedly overruled and the counsel in his closing argument attempts to use it before the jury and it is in its very nature illegal and prejudicial, this court will reverse and order a new trial. Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. (7 Cates), 605, 90 S. W., 623; 1 Michie's Digest, 663.

Within proper bounds, the court will not interfere with the manner of presenting a case by counsel. Ferguson v. Moore, 98 Tenn. (14 Pickle), 342, 350, 39 S. W., 341; Louisville & N. Railroad v. Ray, 101 Tenn. (17 Pickle), 1, 11, 46 S. W., 554; Turner v. State, 72 Tenn. (4 Lea), 206; 1 Michie's Digest, 663.

Upon a review of the evidence in this case, we are of the opinion that the finding of the jury would not have been different if this phase of the argument of counsel had been omitted entirely.

The appellate courts will not reverse a judgment for such an error, unless upon an examination of the entire record in the case it affirmatively appears that such error affected the result of the trial. Code, sec. 10654; Hager v. Hager, 17 Tenn. App., 143, 66 S. W. (2d), 250; Carney & Mai v. Cook, 158 Tenn., 333, 13 S. W. (2d), 322; Ray v. Crain, 18 Tenn. App., 603, 80 S. W. (2d), 113, 121.

Hence it results that the plaintiff's second assignment must be overruled.

3 and 4. The plaintiff in error's third and fourth assignments of error will be considered together, since they are concerned with the same subject-matter.

The plaintiff testified to his occupation, ownership of property, injuries, loss of time, expenses, etc., in order to establish the basis of his claim for damages. On cross-examination, defendant's counsel asked him if he owned a farm. He stated that he did, but stated that there was a mortgage on it. He was then asked if he owned the car that he was in at the time the accident occurred, and he said that he did. He was then asked if he did not own an interest in a grocery store in Shelbyville, about which plaintiff had already testified, and he said that he did. He was then asked if he brought the present suit on the pauper's oath, notwithstanding the fact that he owned such property. This question was objected to, and the objection was sustained. He was then asked if he had a mortgage on his truck, and plaintiff said: "Yes, sir. What I have got is tied." An objection was again raised, and a discussion ensued, in the presence of the jury, as to the grounds of the objection. The counsel for the defendant stated that his purpose in asking these questions was to know the financial condition of the plaintiff and to involve him

in any contradictions that might reflect on his credibility as a witness. The court then held that the question was competent.

Plaintiff's son, J. A. Stone, testified that he had borrowed $600 from his father to run a store in Shelbyville, which was secured by a mortgage.

In his closing argument for the defendant, B. D. Kingree, Sr., made the following statement:

"This man, Stone, who owns a farm in Marshall County, says that his son is the principal owner of the grocery business which they operate here in Shelbyville. He says that he has little or no interest in the store and would represent himself as a pauper. Do you believe a word of this?"

Plaintiff's counsel objected to this argument, but the court overruled the objection on the ground that it might reflect upon the credibility of the plaintiff as a witness. The plaintiff excepted to the ruling, and assigned it as error.

J. C. Robertson, one of the jurors in the case, made the following affidavit, which was attached to and made a portion of the motion for a new trial:

"I was a member of the jury that tried the case of J. C. Stone against Frank O'Neal at the December Term of the Circuit Court of Bedford County. After the case was argued and the judge had instructed us, we retired to the jury room to consider our verdict, and during our deliberation in the jury room, the fact that the plaintiff brought his suit on the pauper oath was mentioned, discussed and considered. The jury was divided at first in its decision on the facts of the case, and it was only after said facts were mentioned and discussed that we reached a verdict in favor of the defendant.

"J. C. Robertson."

As to the argument of defendant's counsel, we are of the opinion that there was no error there. This was a matter within the discretion of the court. That portion of the argument was directed entirely to the credibility of the plaintiff, as evidenced by the closing sentence: "Do you believe that?" The court had already permitted the plaintiff to be questioned as to his financial standing, and the purpose of the questions had already been fully explained in the jury's presence. The argument of defendant's attorney had already been directed at the credibility of the plaintiff, and this was only the final blow at it.

The last assignment is that the court erred in permitting the defendant's counsel to state in open court that the plaintiff had taken the pauper's oath in this case when he was attempting to introduce evidence as to what property the plaintiff owned, and in allowing the defendant's attorney to argue to the court that the plaintiff had taken the pauper's oath when he owned property and

was not entitled to take the pauper's oath, which fact influenced the jury in returning its verdict, as shown by the affidavit of the juror.

We are of the opinion that this assignment is not well made for several reasons: First, because the plaintiff did actually take the pauper's oath when he instituted the suit and admitted in his testimony that he owned property. And, if these facts were before the court, the attorney had a right to comment on them. Second, the plaintiff, in objecting to the evidence, stated that no application had been made to dispauperize the plaintiff by giving proper notice and making a motion to dispauperize. Third, there is no assignment of error going directly to the statement made by counsel in the progress of the trial that the plaintiff had taken the pauper's oath.

The facts of this case present a curious situation. The plaintiff had actually taken the pauper's oath, which fact was known to the attorneys, the parties, and the court. The court can take judicial notice of all papers filed in the case on trial and of all facts which they establish. 23 C. J., 110, sec. 1918. But the jury cannot take judicial notice of any record in the case not proven or admitted. The jury are the triers of facts, and must base their finding on evidence actually introduced. 64 C. J., 1018. Hence the jury could not take judicial notice that the plaintiff had taken the pauper's oath, and that fact was not properly proven in evidence. Evidently the court and counsel for the defendant thought that the court and jury could take judicial knowledge of this fact. The statement of this fact by counsel for the defendant was improper; but it has now developed that the facts were true, and to reverse the case on this proposition would be to base a decision on a barren technicality, which is forbidden by section 10654 of the Code. The courts have long held that they will not reverse cases where the facts are admitted or uncontroverted (4 C. J., 978), or where the facts are admitted in the pleadings (4 C. J., 980), or where the court can take judicial knowledge of the facts and know that they are true (4 C. J., 980). Hence we think there is nothing in this assignment of error, and it is overruled.

It results that all the assignments of errors are overruled, and the judgment of the lower court is affirmed. A judgment will be entered in this court dismissing the suit. The cost of the cause, including the cost of the appeal, is alo adjudged against the plaintiff in error, J. C. Stone.

Faw, P. J., and DeWitt, J., concur.