Anthony CALDARARO, by his guardian Virginia CALDARARO and Virginia Caldararo, Plaintiffs/Appellants,

v.

VANDERBILT UNIVERSITY, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 25, 1990.

Application for Permission to Appeal Denied by Supreme Court July 30, 1990.

---

John T. Conners, Jr., John A. Day, and Eugene N. Bulso, Jr., Boult, Cummings, Conners & Berry, Nashville, for plaintiffs/appellants.

H. Lee Barfield, III and William L. McCarty, Bass, Berry & Sims, Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a nursing malpractice action against Vanderbilt University. It was filed in the Circuit Court for Davidson County by the wife of a patient who suffered severe brain damage while hospitalized at the Vanderbilt University Medical Center. The jury returned a defendant's verdict, and the patient's wife has appealed, insisting that the jury foreman's misconduct tainted the verdict. We affirm the denial of the motion for new trial because of the lack of competent evidence that either extraneous information or outside influence affected the verdict.

### I.

Anthony Caldararo, a chronic, insulin-dependent diabetic, injured his left foot in early July, 1986. He developed a severe infection that went undetected until his wife noticed redness in his foot several days later. Mr. Caldararo was admitted to the Goodlark Hospital in Dickson on July 9,

1986, where his physicians debrided the wound and administered intravenous antibiotics. They were able to stabilize Mr. Caldararo but were unsuccessful in treating the infection in his foot.

On July 18, 1986, Mr. Caldararo was transferred by ambulance to the Vanderbilt University Medical Center to receive hyperbaric oxygen treatments for his foot. His wound was debrided soon after his admission, and he was treated in the hyperbaric oxygen chamber later that evening. He came through these procedures well. The events occurring after he was returned to his room are what gave rise to this lawsuit.

Mr. Caldararo went into cardiopulminary arrest within minutes after being returned to his room. His physicians were able to restore his circulation and breathing within five to ten minutes after being summoned but not before Mr. Caldararo's brain was severely injured due to the lack of oxygen. He was completely debilitated following his release from the hospital, requiring his wife's constant care and attention.

Mrs. Caldararo sued Vanderbilt in May, 1987, alleging that her husband's brain damage had been caused by his attending nurses' misdiagnosis of his condition after he had been returned to his room and by their failure to render him timely, proper assistance. On November 11, 1988, after eight days of trial, the jury returned a verdict in favor of Vanderbilt University.

Mr. and Mrs. Caldararo filed a motion for new trial insisting that the jury foreman had acted improperly during the jury's deliberations. The trial court denied the motion for new trial, and the Caldararos perfected this appeal.[1]

### II.

The Caldararos' motion for new trial was based on two jurors' affidavits stating that the foreman read from his trial notes and also described his understanding of how a nurse would examine a patient with a suspected diabetes problem. The trial court determined that the foreman's

---

1. Mr. Caldararo died on April 9, 1989, while this appeal was pending. The appeal is now being prosecuted by Mrs. Caldararo, his personal representative.

comments were not prejudicial without squarely deciding whether they amounted to extraneous information or outside influence. This important threshold question should have been addressed first. We find the information in the affidavits to be incompetent because it involves statements made during the course of the jury's deliberations that do not fall within one of the exceptions recognized in *State v. Blackwell*, 664 S.W.2d 686 (Tenn.1984).

### A.

David Hicks was one of the jurors who decided the Caldararos' case. He was chosen even though he revealed during voir dire that his wife had been a surgical nurse at Vanderbilt when Mr. Caldararo was a patient there. Mr. Hicks also stated that his wife had received CPR training and that they had occasional discussions at home concerning the resuscitation of surgical patients.

Even though his wife was a registered nurse, Mr. Hicks stated that he could be "extremely fair" because people ought to be responsible for what they do. He also added that he would not necessarily believe a nurse's testimony over other witnesses and that he knew he could not discuss the case with his wife while he was serving on the jury.

Mr. Hicks' fellow jurors elected him foreman. After the trial, two of his fellow jurors signed affidavits stating that Mr. Hicks disregarded the trial court's admonitions against reading trial notes aloud and that he made repeated references to the fact that his wife was a nurse. They also stated that Mr. Hicks argued that nurses know to check a diabetic's breath for the smell of "acid" or "cucumbers" and thus that the Vanderbilt nurses would have determined whether Mr. Caldararo was breathing even if they thought his difficulties were diabetes-related.

### B.

Parties seeking a new trial because of alleged jury misconduct must at the outset satisfy the court that they have admissible evidence on the issue. When the evidence comes from the jurors themselves, its admissibility, prior to January 1, 1990,[2] is governed by Fed.R.Evid. 606(b) which was incorporated into Tennessee law in *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn.1984).[3]

Fed.R.Evid. 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror could be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b) represents a compromise between important public policies. It enables the courts to protect the litigants from verdicts tainted by extraneous prejudicial information or outside influence. At the same time, it recognizes the importance of the inviolate nature of a jury's deliberations. *Maldonado v. Missouri Pac. Ry.*, 798 F.2d 764, 770 (5th Cir.1986); *United States v. Bagnariol*, 665 F.2d 877, 884 n. 4 (9th Cir.1981); *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 148 (3d

---

2. After January 1, 1990, the admissibility of jurors' statements concerning a verdict's validity is governed by Tenn.R.Evid. 606(b).

3. The Court of Criminal Appeals had started using Fed.R.Evid. 606(b) seven years earlier. *Montgomery v. State*, 556 S.W.2d 559, 561–62 (Tenn.Crim.App.1977). Since we have adopted the federal rule as our own, the decisions of the federal courts construing the rule will provide helpful guidance for our deliberations. *Continental Casualty Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn.1986); *Bowman v. Henard*, 547 S.W.2d 527, 530 (Tenn.1977).

Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *United States v. Blackston,* 547 F.Supp. 1200, 1217 (S.D.Ga.1982).

The rule precludes inquiries into the jury's deliberative process while allowing juror testimony concerning objective incidents or events that constitute external or extraneous influences on the jury. *Martinez v. Food City, Inc.,* 658 F.2d 369, 373 (5th Cir. Unit A Oct.1981). Thus, it insures that jurors will not be guarded in their deliberations for fear of later scrutiny by others. It also prevents jurors whose views are in the minority from manipulating the system by repudiating the verdict and thereby requiring a new trial. *In re Beverly Hills Fire Litig.,* 695 F.2d 207, 213 (6th Cir.1982).

This court has not had many occasions to apply Fed.R.Evid. 606(b). However, the Supreme Court has held that the rule permits jurors to testify only concerning (1) extraneous prejudicial information, (2) outside influence, or (3) antecedent agreements to be bound by a quotient or majority result. *Goss v. Hutchins,* 751 S.W.2d 821, 828 (Tenn.1988).

The Supreme Court has also recently held that "extraneous information" is information from a source outside the jury. *State v. Coker,* 746 S.W.2d 167, 171 (Tenn. 1987). Thus, intra-jury pressure or intimidation, *State v. Hailey,* 658 S.W.2d 547, 553 (Tenn.Crim.App.1983), premature jury deliberations contrary to the trial court's instructions, *State v. Frazier,* 683 S.W.2d 346, 353 (Tenn.Crim.App.1984), and speculation about a verdict's consequences, *State v. Workman,* 667 S.W.2d 44, 51–52 (Tenn.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984); *State v. Estes,* 655 S.W.2d 179, 185 (Tenn.Crim.App.1983), have been found to be internal matters that do not involve extraneous information or outside influence.

 Like our federal counterparts, Tennessee's courts now recognize a distinction between extrinsic and intrinsic influence when reviewing a motion for new trial based on alleged juror misconduct. External influences that could warrant a new trial if found to be prejudicial include: (1) exposure to news items about the trial, (2) consideration of facts not admitted in evidence, and (3) communications with non-jurors about the case. *Government of Virgin Islands v. Gereau,* 523 F.2d at 149–50; *United States v. Blackston,* 547 F.Supp. at 1217. Internal influences that are not grounds to overturn a verdict include: (1) discussions among jurors, (2) intimidation or harassment of one juror by another, (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions. *United States v. Norton,* 867 F.2d 1354, 1366 (11th Cir.1989); *United States v. Krall,* 835 F.2d 711, 716 (8th Cir.1987); *Carson v. Polley,* 689 F.2d 562, 581 (Former 5th Cir.1982); *United States v. Duzac,* 622 F.2d 911, 913 (5th Cir.1980).

### C.

 The trial court permitted the jury to take notes during the trial. Recognizing that several jurors had taken notes, the trial court included the following charge in its instructions:

Once you retire to the jury room you may refer to your notes but only to refresh your own memory. You may not read from your notes to your fellow jurors or otherwise inform them of what you have written. The notes may contain errors. They may be understood or taken out of context since they could only pertain to part of the testimony and are not an exact account of what was said by a witness. You are free to discuss the testimony of the witnesses with your fellow jurors but each juror must rely on his or her own memory as to what a witness did or did not say.

After the trial, two jurors signed affidavits stating that Mr. Hicks repeatedly read his notes to the other jurors during their deliberations despite the trial court's instructions. One of the jurors also stated that he admonished Mr. Hicks not to read from his notes.

Tennessee has joined the great majority of the states in rejecting the common law rule against jurors taking their notes into

the jury room.[4] Thus, in a case in which the jury foreman allegedly used his notes to influence the other jurors, the Supreme Court held that trial courts, in their discretion, may permit note-taking and could also, with proper cautionary instructions,[5] permit the jurors to take their notes into the jury room. *Watkins v. State*, 216 Tenn. 545, 554–59, 393 S.W.2d 141, 145–49 (1965).

In *Watkins v. State*, the Supreme Court also discounted concerns that jurors' notes would be inaccurate and incomplete and that note-taking jurors would be able to exert undue influence over the jurors who did not take notes. On rehearing, the Court reasoned that jurors using notes to refresh their memories were no more prejudicial than jurors with "a more retentive mind." *Watkins v. State*, 216 Tenn. at 564, 393 S.W.2d at 149–50. Other courts have agreed, noting that there is no analytical difference between telling other jurors about testimony one remembers and telling them about testimony with the aid of one's notes. *State v. Collins*, 130 Ariz. 280, 635 P.2d 873, 875 (Ct.App.1981).

A juror's notes regarding testimony received during the trial have consistently been found to be intrinsic, rather than extrinsic, information. *United States v. Bassler*, 651 F.2d 600, 602 (8th Cir.1981); *Winters v. United States*, 582 F.2d 1152, 1154 (7th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 332 (1978). Thus, courts applying Fed.R.Evid. 606(b) or a similar rule have held that evidence of a juror using notes during deliberations is inadmissible on the issue of jury misconduct, *United States v. Kimberlin*, 527 F.Supp. 1010, 1011–12 (S.D.Ind.1981); *State v. Collins*, 635 P.2d at 874. The conclusion is the same even when the notes were taken or used contrary to the court's instructions. *United States v. Bassler*, 651 F.2d at 602 (foreperson took notes contrary to instructions); *United States v. Kimberlin*, 527 F.Supp. at 1012 (juror consulted

notes contrary to prohibition against note-taking).

We agree with this interpretation of Fed. R.Evid. 606(b). Notes taken by a juror during the trial are not extraneous information, and their use during deliberations is not outside influence. Accordingly, the two jurors' statements concerning Mr. Hicks' use of his notes during the deliberations is inadmissible and cannot provide grounds for a new trial based on juror misconduct.

### D.

■ Mrs. Caldararo also asserts that she is entitled to a new trial because Mr. Hicks repeatedly told his fellow jurors that he was married to a nurse and also because he opined that the nurses would have checked Mr. Caldararo's breathing even if they thought his difficulties were caused by his diabetes. We disagree. Normal jury deliberations that include discussions based upon the jurors' generalized knowledge and experience do not constitute grounds for overturning a verdict.

■ Jurors must render their verdict based on the evidence introduced at trial. *See Citizens' St. Ry. v. Burke*, 98 Tenn. 650, 653, 40 S.W. 1085, 1085 (1897); *Stone v. O'Neal*, 19 Tenn.App. 512, 519, 90 S.W.2d 548, 552 (1936). However, they are permitted to weigh the evidence in light of their own knowledge and experience. *See High v. Lenow*, 195 Tenn. 158, 168, 258 S.W.2d 742, 746 (1953). Thus, trial courts routinely instruct juries, as the trial court did in this case, that "you are not required to set aside your common knowledge ... as you have the right to weigh the evidence in light of your own observations and experiences." *See* 8 Tenn.Prac. *Tennessee Pattern Jury Instructions—Civil* 1.15.

■ It is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.

---

4. *See* Annotation, *Taking and Use of Trial Notes by Jury*, 14 A.L.R.3d 831 (1967).

5. The cautionary instructions are (1) that the notes should not be considered as a transcript

of the testimony and (2) jurors should use their notes to refresh their memory, not to persuade other jurors. *Watkins v. State*, 216 Tenn. 545, 559, 393 S.W.2d 141, 147 (1965).

*Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). Thus, it would be unreasonable, and perhaps unwise, to expect juries to be completely sterilized and free of any external influences. The jurors' various attitudes, philosophies, experiences, and backgrounds are the "very human elements that constitute one of the strengths of the jury system." *United States v. McKinney*, 429 F.2d 1019, 1022–23 (5th Cir.1970), *cert. denied*, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971).

▉▉▉ Accordingly, jurors are not required to be completely ignorant about a case, and a verdict will not be overturned because of jurors' generalized knowledge of the parties or of some other aspect of the case. *Government of Virgin Islands v. Gereau*, 523 F.2d at 151; *Garcia v. State*, 777 P.2d 603, 608 (Wyo.1989). A juror's personal experiences unrelated to the litigation are not external information. *Martinez v. Food City, Inc.*, 658 F.2d at 374; *United States v. Duzac*, 622 F.2d at 913.[6] However, a juror's personal experiences directly relating to the parties or events directly involved in the litigation may be. *Hard v. Burlington Northern R.R.*, 870 F.2d 1454, 1462 (9th Cir.1989).

▉▉▉ None of the statements attributed to Mr. Hicks indicate that he had any prior or extraneous knowledge of the parties or of the events that gave rise to this suit. At most, he claimed to have some specialized knowledge about diabetics and proper resuscitation procedures, presumably because he was married to a nurse. This is not the type of extraneous information that requires us to overturn a verdict.

Mr. Hicks disclosed his wife's profession during voir dire, and both parties inquired freely into his prior experience with diabetes and resuscitation procedures. There is no evidence that Mr. Hicks was untruthful during the voir dire questioning or that he ignored the trial court's admonition not to talk about the case with his wife.[7] The jurors were properly instructed to base their decision on the evidence presented and were properly admonished to base their understanding of the evidence on their own memories. Mr. Hicks' comments do not involve extraneous information and were made during the jury's deliberations. Accordingly, the affidavits concerning Mr. Hick's statements are incompetent and do not provide grounds for overturning the verdict.

### III.

We affirm the trial court's denial of Mrs. Caldararo's motion for new trial and remand the case for whatever other proceedings may be required. We also tax the costs of this appeal to Virginia Caldararo and her sureties for which execution, if necessary, may issue.

TODD, P.J., concur.

CANTRELL, J., files separate dissent.

CANTRELL, Judge, dissenting.

I respectfully dissent from the opinion of the majority.

It is my opinion that the statements of the jury foreman were both extraneous and prejudicial. The affidavits of the other jurors are, therefore, admissible and the cause should be remanded for a new trial.

The plaintiff's theory for the recovery of damages for the injuries to Mr. Caldararo was that the attending nurses negligently delayed efforts to resuscitate Mr. Caldararo because they thought he was suffering from a problem related to his diabetes. Eyewitnesses testified that the nurses reacted to Mr. Caldararo's symptoms by obtaining chemstrips and lance sets with which to check the patient's blood glucose level.

---

6. The Court of Criminal Appeals held recently that a juror's statement that he *did not vote his* convictions because another juror opined that "a shot naturally travels upward when it enters the body" was incompetent because it did not involve external information or outside influence. *State v. Higdon*, App. No. 89–41–111, 1990 WL 26772 (Tenn.Crim.App. Mar. 15, 1990).

7. Of course, extraneous information could enter the jury room through the mouth of a juror. *United States v. Blackston*, 547 F.Supp. at 1218 n. 19. Thus, there might have been a reason to grant a new trial had Mr. Hicks discussed the case with his wife, done independent research, or conducted his own tests. There is no evidence that he engaged in any of these activities.

The information injected into the jury deliberations by the foreman tended to negate the plaintiff's theory. Mr. Hicks told the other jurors that there was a simple test the nurses would have employed if they thought Mr. Caldararo was suffering from a diabetic condition: they would have checked his breath for a cucumber-like smell and in the process would have discovered that he was not breathing. Therefore, resuscitative efforts would have begun immediately even if the nurses had been mistaken about the source of the patient's distress.

I do not see how we could call that type of information generalized knowledge. In my opinion it amounts to unsworn expert testimony.

I would then adopt the objective test suggested by some of the Federal courts, *see United States v. Brooks,* 677 F.2d 907 (D.C.Cir.1982), and in our prior unpublished opinion of *Michetti v. Arrowsmith* (Tenn. Ct.App., filed in Nashville, Aug. 30, 1989). The question then becomes one for the court to answer: Would a reasonable juror be prejudiced or influenced by the extraneous evidence?

In this case, I would decide the issue in favor of the plaintiff and remand the case for a new trial.