# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**June 7, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

ELEASE OWENS, for herself and as )
next-of-kin to ETHERLINE )
BAILEY, Deceased, )
                    )
    Plaintiff/Appellant, )     Shelby Circuit No. 35507
                    )
**v.** )
                    )     Appeal No. 02A01-9704-CV-00089
METHODIST HEALTH CARE )
SYSTEMS and WILLIAM C. PHELPS, )
M.D., )
                    )
    Defendants/Appellees. )

## APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
## AT MEMPHIS, TENNESSEE

### THE HONORABLE JANICE M. HOLDER, JUDGE

For the Plaintiff/Appellant:        For the Defendant/Appellee,
                                 William C. Phelps, M.D.:

Duncan E. Ragsdale          Jerry E. Mitchell
Memphis, Tennessee         Stephen C. Barton
                                 Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a medical malpractice case. The plaintiff asserts that the defendant physician caused the death of the decedent in the course of childbirth. The jury found in favor of the defendant physician. The plaintiff appeals, asserting error in the jury instructions and juror misconduct. We affirm.

Etherline Bailey ("decedent") was admitted to Methodist Hospital Labor and Delivery at 11:35 p.m. on August 16, 1990. She labored under observation until 7:10 a.m. when she was taken to the operating room for a cesarean section delivery by Defendant William C. Phelps, M.D. ("Phelps"). After the cesarean section incision had been closed, an erroneous sponge count performed by employees of the hospital indicated a sponge was missing. A subsequent x-ray revealed what was believed to be a sponge left in the decedent. Phelps reopened the incision and searched unsuccessfully for the missing sponge. A later sponge count revealed that no sponges had been missing.

During the entire procedure, including the reopening of the incision, decedent lost an unusual amount of blood. Phelps, assisted by Dr. C. O. Daugherty, worked to replace decedent's lost fluids and to stop the bleeding. Due to decedent's excessive blood loss and a shortage of clotting factors (called disseminated intravascular coagulation or DIC), Phelps brought in Dr. Thomas Earl Motley as a blood management consultant. Dr. Motley began managing decedent's fluids. There was some delay in the time taken by Methodist Hospital ("Methodist") in filling orders for blood products for the decedent; the parties dispute whether the conduct of Methodist's blood bank fell below the standard of care. In any event, after being taken to the recovery room, the decedent's condition continued to decline. She subsequently went into cardiac arrest. Phelps ordered full cardiac resuscitative measures with life support, but these were unsuccessful and decedent was pronounced dead at 3:24 p.m.

Elease Owens ("Owens"), for herself and as the decedent's next of kin, brought suit against Methodist and Phelps. Phelps' primary defense was that decedent died from a rare, generally untreatable condition called amniotic fluid embolism (AFE). With AFE, debris from the amniotic sac contaminates the blood supply and interferes with the clotting factors. The final autopsy report confirmed that amniotic fluid bubbles were present in the lungs along with leukocyte thrombi; this is associated with AFE. However, the report also noted an unsutured tear in decedent's cervix. Owens alleges that the unsutured tear in the cervix contributed to decedent's death. In the

alternative, Phelps asserted that Methodist was negligent and fell below its standard of care.

Prior to trial, Methodist settled with Owens. Nevertheless, the jury was instructed that if it found in favor of Owens, it was to assign the percentage of fault between Methodist and Phelps. The jury's verdict assigned one hundred (100%) percent of the fault to Methodist, which was no longer a defendant.

Owens filed a motion for new trial, alleging omissions in the jury instructions and juror misconduct. Owens attached the affidavits of several jurors stating that one of the jurors had consulted a physician friend regarding the case. During the jury's deliberations, that juror related to the other jurors that the physician had told her that the defense testimony proffered by Phelps regarding AFE was "bunk." The trial court withheld judgment on the motion until after the juror's contempt hearing. Ultimately, the motion for new trial was denied. From this order, Owens now appeals.

Owens' issues on appeal concern the trial court's instructions to the jury and jury misconduct. Owens alleges the trial court failed to include all of the Plaintiff's theories and contentions in its jury instructions and that the instructions pertaining to Methodist were confusing and misleading. Owens alleges the verdict is contrary to the weight of the evidence and the law. Owens further alleges that the jury considered matters not in evidence, communicated with non-jurors about the case, and allowed their verdict to be tainted by passion, prejudice and caprice. Such misconduct, Owens asserts, violated Plaintiff's right to an inviolate jury trial, as guaranteed by art. I, § 6 of the Tennessee Constitution.

The determination of whether jury instructions were proper is a question of law and, therefore, our standard of review is *de novo* with no presumption of correctness. **See Solomon v. First Am. Nat'l Bank**, 774 S.W.2d 935, 940 (Tenn. App. 1989). "In reviewing a jury charge, we consider the charge as a whole to determine whether prejudicial error has been committed. The charge will not be invalidated so long as it fairly defines the legal issues involved in the case and does not mislead the jury." **Hunter v. Burke**, 958 S.W.2d 751, 756 (Tenn. App. 1997).

Owens asserts that the following bases of recovery were omitted from the jury instructions: torn cervix, transfusion therapy, repetitive surgical manipulations, general anesthesia, and amniotic fluid embolism. Owens' motion for new trial states her objection to these omissions. However, the Tennessee Supreme Court in **Rule v. Empire Gas Corp.**, 563 S.W.2d 551, 554 (Tenn. 1978), made

2

it clear that "in order to predicate error upon an alleged omission in the instructions given to the jury by the trial judge he must have pointed out such omission to the trial judge at trial by an appropriate request for instruction." *Id.* The Plaintiff points to no place in the record in which jury instructions on these "omitted" issues were requested. It is the appellant's " 'responsib[ility to] furnish[] the appellate court with a record that will enable that court to reach the issues raised.' " *Ewell v. Hill*, No. 02A01-9608-CH-00178, 1998 WL 18142, at *2 (Tenn. App. Jan. 21, 1998) (quoting *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. App. 1996)). It is the threshold duty of a party alleging error in the omission of a specific instruction to demonstrate that a correct and complete request for such instruction was submitted to, and refused by, the trial judge. *See England v. Burns Stone Co.*, 874 S.W.2d 32, 37 (Tenn. App. 1993). In the absence of a request for such instructions, the trial court must be affirmed on this issue.

Owens also contends on appeal that the jury instructions were confusing and misleading. Owens argues that the jury instructions would lead the jury to believe that Methodist could be held liable for the negligence of the certified registered nurse anesthesiologists (CRNAs) or the anesthesiologist, even though neither were employees of Methodist and Methodist could not be held liable for their negligence. In addition, Owens contends that the jury instructions were erroneous because they failed to set forth the required elements under Tennessee's medical malpractice statute, Tennessee Code Annotated § 29-26-115. This statute requires the "claimant" in a medical malpractice case to prove (1) the standard of care applicable to the defendant, considering his or her specialty and community standards, (2) that the defendant's actions fell below that standard of care, and (3) that, as a result, the plaintiff suffered injuries that would not have otherwise occurred. *See* Tenn. Code Ann. § 29-26-115 (1980).

The instructions at issue state:

Dr. Phelps further contends that if any deviation from the standard of care occurred, any such deviation was by the employees of Methodist Hospital by failing to properly administer blood products in a timely manner or by the anesthetists' improper use of a general anesthesia.

. . . .

The defendant, Dr. Phelps, has the burden of proving, by the greater weight or preponderance of the evidence: 1) the recognized standard of professional practice for a nurse or nurse anesthetist in the community in which that person practices or in a similar community; 2) that such person acted with less than or failed to act with ordinary and reasonable care in accordance with that standard; 3) and that the

3

negligence of any nurse or nurse anesthetist was a proximate cause of injuries and damages to the plaintiff that would not otherwise have occurred.

. . . .

In deciding this case, you must determine the fault, if any of each of two persons, William C. Phelps, and the Methodist Health Care Systems. If you find that both Dr. Phelps and the Methodist Health Care Systems are at fault, you will then compare their fault. To do this, you will need to know the definition of fault. A person is at fault if you find by a preponderance of the evidence that a person was negligent and that the negligence was a proximate cause of the injury or damages for which a claim is made.

. . . .

A hospital has the duty to exercise that degree of care, skill and diligence used by hospitals generally in the community and required by its express or implied contract with the patient and to furnish the care, attention and protection reasonably required by the patient's mental and physical condition. The amount of caution, attention and protection required in the exercise of reasonable care depends upon the known condition of the patient and the patient's needs.

If you find that an employee of the hospital, while in the course of employment, was negligent in the performance of the employee's duties, then the hospital is legally responsible for the injuries proximately caused by the employee's negligence.

. . . .

Ladies and gentlemen, you will be given a verdict form to record your verdict. Your first obligation is to determine the fault, if any, of William C. Phelps and Methodist Health Care Systems. Next, you must assign a percentage of fault to each of them. This percentage figure for each may range from zero (0) percent to one hundred (100) percent. When the percentages of fault of those being compared are added together, the total must equal either zero (0) percent or one hundred (100) percent. Your next obligation is to determine the full amount of damages sustained by the plaintiff if you find fault on the part of either Dr. Phelps or the Methodist Care Systems.

On appeal, a jury charge will not be invalidated so long as the entire jury charge, viewed as a whole, fairly defines the issues and does not mislead the jury. *See Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679, 685 (Tenn. App. 1991). Jury instructions are not required to be perfect. *See id.; City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855, 858 (Tenn. App. 1996). The jury instructions in this case, considered as a whole, fairly define the issues and do not mislead the jury.

The fact that the jury instructions contained statements that the CRNAs and the anesthesiologist were employees of Methodist was harmless error under the facts of this case. The jury concluded that Phelps was not negligent. The Plaintiff points to nothing in the record indicating that, had the instructions stated that the CRNAs and anesthesiologist were not employees of Methodist, the jury would have concluded that Phelps was negligent. Therefore, any error in this regard would not affect the judgment or prejudice the judicial process. *See* Tenn. R. App. P. 36(b). Therefore, we decline to invalidate the trial court's charge to the jury.

Owens also contends on appeal that the jury verdict, assessing one hundred percent of liability to Methodist, is contrary to the weight of the evidence. In the order denying Owens' motion for a new trial, the trial judge found that the evidence was sufficient to sustain the verdict for Phelps. When factual determinations made by a jury have been approved by the trial judge, an appellate court may set aside these factual findings only in the absence of any material evidence in the record to support the verdict. *See Jackson v. Patton*, 952 S.W.2d 404, 405 (Tenn. 1997). In *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980), the Court said that "when the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed." *Id.* at 129; *see also Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996). At trial, the jury heard the following expert testimony on whether Methodist breached its standard of care in supplying the blood products:

Q:      Now, how long was it from the time that Dr. Phelps or whoever ordered the blood product ordered it [sic] until the time that the hospital got it there?
A:      It -- I think for the blood products like cryoprecipitate and fresh frozen plasma, it was like two plus, greater than two hours.
Q:      And that would be a delay which would be unacceptable to you, correct?
A:      Correct.
Q:      And any delay of that type when a physician orders a particular product if the hospital can't get it there in less than an hour, you would feel that would be below the standard of care for the hospital, true?
A:      Yes.
Q:      And you also feel that that delay by the hospital was a contributing factor to the ultimate outcome in this case, true?
A:      I think we have discussed that before and I do think that.
Q:      In other words, given everything we have talked about, if the DIC could have been treated earlier, then Ms. Bailey may very well have survived, if the blood products had gotten there?
A:      I think that is very conceivable.

5

The testimony at trial clearly indicated that it was the nurses' duty to perform the sponge count and that the miscount caused a delay. Phelps also points to testimony in the record that he "adhere[d] to the standard of care in all aspects of treatment," that his management of the blood products was within the standard of care in Tennessee, that he appropriately repaired the uterus, that he was obligated to search for the missing sponge if he was told that a sponge was missing, and that the decision to use general anesthesia was made by the anesthetists. Based on the entire record, the jury could reasonably have concluded that Phelps did not deviate from the appropriate standard of care. There was adequate testimony in this case to support the jury's verdict in Phelps' favor.

On appeal, Owens also alleges that the trial court erred in denying the motion for a new trial based on juror misconduct. The record indicates that one juror consulted a physician friend who said that the testimony proffered by Phelps regarding Phelps' AFE defense was "bunk." Affidavits showed that this information was shared with other jurors during the jury's deliberations. Owens acknowledges that the extraneous information in this case tended to undercut Phelps' defense, not the Plaintiff's evidence. Nevertheless, Owens argues that the jurors' affidavits indicate that the juror's introduction of extraneous information produced a strong negative reaction from the other jurors and therefore subverted the judicial process. He also asserts that the extraneous information caused the jury to focus on a theory on the lost sponge that would have resulted in a finding against Methodist.

The admissibility of the jurors' affidavits is governed by Rule 606(b) of the Tennessee Rules of Evidence, which limits jurors' testimony to three areas: (1) extraneous prejudicial information, (2) outside influence, and (3) agreements made in advance to be bound by a quotient or gambling verdict. *See* Tenn. R. Evid. 606(b).[1] This Court has previously noted several "internal" influences

[1] The entire text of Tennessee Rules of Evidence, Rule 606(b) is:

(b) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

that cannot serve as grounds to overturn a jury verdict: "(1) discussions among jurors, (2) intimidation or harassment of one juror by another, (3) a juror's personal experiences not directly related to the litigation, and (4) a juror's subjective thoughts, fears, and emotions." *Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 742 (Tenn. App. 1990). Thus, we cannot consider as grounds for a new trial Owens' assertions of error that the jury based the verdict on the lost sponge or that jurors harassed each other during the deliberations.

The sole issue for our consideration, therefore, is whether the physician friend's statement deriding Phelps' AFE defense prejudiced Owens. As noted by the Plaintiff, *Caldararo* states that consideration of evidence that has not been admitted and communications with non-jurors are external influences that might justify a new trial. *See id.* This is true, however, only if such events are found to be prejudicial. *See id.* In this case, the misconduct was clearly harmless because the jury found Phelps was not negligent despite criticism of his AFE defense as "bunk" by the juror's physician friend. This information was not prejudicial to Owens. Indeed, the statement dispelled Phelps' primary defense. We find no evidence that the verdict was based on passion, prejudice and caprice.

Owens also asserts on appeal that the juror's discussion of the case with her physician friend violated Owens' right to an inviolate jury trial as guaranteed by art. I, § 6 of the Tennessee Constitution.[2] Owens notes the trial court's statements that the juror's misconduct was an "obstruction of justice" and "an interference of the order of the process of decision making in jury cases." Despite the trial court's strong statements and obvious displeasure at the juror's disregard of its instructions, the trial court expressly denied Owens' motion for a new trial even though the juror's misconduct was at issue in that motion. We find no error in the trial court's decision.

---

Tenn. R. Evid. 606(b).

[2] The Constitution provides: "Trial by jury - Qualifications of jurors. - That the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors." Tenn. Const. art. I, § 6.

In sum, since the record does not indicate that Owens requested jury instructions on the topics omitted, we decline to reverse the trial court's denial of a new trial on that basis. The jury instructions, viewed as a whole, were not misleading or confusing. Furthermore, the jury charge indicating that the anesthetists were employees of Methodist was harmless error. Based on the trial record as a whole, we find sufficient material evidence to support the jury verdict. The jury misconduct was not prejudicial to Owens based on the facts of this case. Finally, Owens' right to an inviolate jury trial was not violated. Consequently, the trial court's denial of Owens' motion for a new trial is affirmed.

The decision of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**DAVID R. FARMER, J.**

8