IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 5, 2009 Session

## LINDA KAY GAINES, ET UX. v. LESLIE MCCARTER TENNEY, ET AL.

Appeal from the Circuit Court for Sevier County
No. 2003-149-11     Richard R. Vance, Judge

---

No. E2008-02323-COA-R3-CV - FILED JANUARY 21, 2010

---

In a negligence action arising from an automobile accident, the original trial resulted in a jury verdict in the amount of $10,000 for the plaintiff.  The plaintiff then moved for a new trial, alleging juror misconduct.  After reviewing a juror's deposition testimony, the trial court ordered a new trial.  A second jury trial and verdict resulted in a $30,000 judgment for the plaintiff.  Following the second judgment, the defendants timely appealed the trial court's order for a new trial.  We hold that Tenn. R. Evid. 606(b) prohibits introduction of juror testimony concerning the deliberation process that does not fall under one of the three exceptions enumerated in the rule.  The order for a new trial is reversed and the lawsuit remanded for enforcement of the original judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and  D. MICHAEL SWINEY, J. joined.

Louis A. McElroy, II, Knoxville, Tennessee, for the Appellants, Leslie McCarter Tenney, Charles F. Frazier, and State Farm (Mutual) Automobile Insurance Company.

George R. Garrison, Sevierville, Tennessee, for the Appellee, Linda Kay Gaines.

## OPINION

## I.  BACKGROUND

The genesis of the underlying cause of action was an automobile accident that occurred on November 14, 2000, in Sevier County.  Plaintiff Linda Kay Gaines was traveling northbound on Highway 411 and had stopped to make a left turn.  Her car was struck from

behind by a vehicle driven by Defendant Leslie McCarter Tenney. Defendant Charles F. Frazier owned the vehicle driven by Ms. McCarter Tenney.[1]

The lawsuit was initially filed by Gilbert M. Gaines and Linda Kay Gaines ("Mr. and Mrs. Gaines") against the defendants in the General Sessions Court for Sevier County. Upon motion by Mr. and Mrs. Gaines dated March 6, 2003, the lawsuit was transferred to the Circuit Court.

In their lawsuit, the Mr. and Mrs. Gaines sought to recover damages for medical expenses, lost wages, and injuries sustained in the wreck by Ms. Gaines, along with a lost of consortium claim for Mr. Gaines.[2]

The case was tried to a jury and resulted in a verdict in favor of Ms. Gaines in the amount of $10,000.00. The trial court entered a judgment on the jury's verdict for Ms. Gaines on June 23, 2004.

Mr. and Mrs. Gaines filed a timely motion for a new trial or additur alleging inter alia that "the jury's award . . . is clearly so inadequate as to indicate passion, prejudice, caprice or corruption . . . ." In support of their motion, they alleged that jury misconduct required a new trial. Before deciding the motion, the trial court reviewed the deposition transcript of Janet Markley, a juror who alleged another juror's misconduct during deliberations.

In her deposition testimony, Ms. Markley described her experience on the jury:

One of the other jurors became quite verbally hostile, in that, he was concerned about the time frame that we would be deliberating or discussing or talking all evening, and possibly have to come back another day to deliberate. And he was cussing and swearing at me, and at one point reached across--or leaned across the table at me and then threw paper at me.

Ms. Markley gave the following answers to counsel's questions regarding how the other juror's conduct affected her:

A   I was alarmed, shocked, and as the timing continued--I mean, he

---

[1]Defendant State Farm (Mutual) Automobile Insurance Company had issued an insurance policy to Ms. Gaines and her husband, Gilbert M. Gaines, that was in effect at the time of the accident.

[2]Mr. Gaines's loss of consortium claim was denied by both of the trial court's judgments and is not at issue on this appeal.

was the most verbal, but the others--there were several others that were obviously quite angry at me, again, because of the time factor, and I wanted to discuss and deliberate. And I was somewhat fearful.

Q    Did the threats or the actions of the juror that you described affect whether you agreed or disagreed with the final verdict in the case?

A    Yes.

Q    How so?

A.    I guess at that point I was feeling so overwhelmed, and not knowing what to do or who to discuss it with, and seeing that it was becoming more hostile, that I just decided to give in and go along with what one or two people wanted.

Q    Did you fear for your safety if you failed to acquiesce?

A    Yes.

Q    After the verdict was rendered, did you have any fear that you would be subjected to violence if you had not acquiesced to the verdict?

A    Yes.

Q    Will you tell us about that?

A    Again, just that this man was so hostile, the next day as I was out driving around in Sevierville, I kept looking in my rear-view mirror kind of looking around thinking, you know, that he was going to be there or come up and--I don't know what he was going to do, but I just--I was afraid I was going to run into him and something would happen not good.

Ms. Markley testified that after her jury service, she contacted the court clerk, who then put her in touch with the judge to discuss what had happened.

The trial court granted the motion for a new trial. In doing so, the court concluded: "Under the case law interpreting [Tennessee] Rule [of Evidence] 606, the type of pressure testified to by Ms. Markley does not constitute improper outside pressure." Despite this conclusion, the trial court held:

> The attack upon Ms. Markley subverted the jury's role to deliberate and fully evaluate the evidence and the chilling effect that the juror's actions likely had on the other members of the jury panel cannot be ignored. It is very likely that the other jurors were intimidated or placed in fear after the violent encounter. This unquestionably resulted in there being no free exchange of ideas or evaluation of the evidence.

A second trial was held before a new jury, after which judgment was entered on a jury verdict for Ms. Gaines in the amount of $30,000. After the final judgment, per Tenn. R. App. P. 3, Ms. McCarter Tenney and Mr. Frazier timely appealed the order that had granted a new trial.

## II. ISSUES

We restate the issues as follows:

A.  Whether the trial court erred in concluding that Juror Markley's testimony described internal jury influence, rather than improper outside pressure, under Tenn. R. Evid. 606(b).

B.  If Ms. Markley's testimony did not constitute improper outside pressure, whether the trial court erred in admitting that testimony as evidence of juror misconduct during deliberation.

C.  Whether the trial court erred in granting Ms. Gaines's motion for a new trial.

## III. STANDARD OF REVIEW

Parties seeking a new trial must first establish before the court that they have relevant, admissible evidence. *Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738, 741 (Tenn. Ct. App. 1990). When that evidence comes from juror testimony, its admissibility is governed by Tenn. R. Evid. 606(b). *Id.* at 741 n.2. A trial court's decision on the admissibility of

evidence is evaluated on an abuse-of-discretion standard. *Schwartz v. Lookout Mountain Caverns, Inc.*, No E1999-01142-COA-R9-CV, 2000 WL 555058, at *2 (Tenn. Ct. App. E.S., May 8, 2000) (citing *Patton v. Rose*, 892 S.W.2d 410, 415 (Tenn. Ct. App. 1994)). Tennessee courts have found an abuse of discretion when a trial court errs in admitting juror testimony that is not admissible under Tenn. R. Evid. 606(b). *See, e.g., Walsh v. State*, 166 S.W.3d 641, 649 (Tenn. 2005) (holding that under Rule 606(b), "it was error for the post-conviction court to consider the juror's testimony regarding the effect of the court officer's statement on her decision making process"); *Schwartz*, 2000 WL 555058, at *1 (holding that under Rule 606(b), "the Trial Court erred in accepting the [juror's] affidavit" concerning what expenses jurors had awarded in calculating an award of damages).

## IV. ANALYSIS

### A. IMPROPER OUTSIDE PRESSURE UNDER RULE 606(b)

It is undisputed that the only evidence offered in support of Ms. Gaines's motion for a new trial was Ms. Markley's post-trial deposition testimony depicting juror misconduct. Juror testimony concerning what took place during deliberations is generally inadmissible as a matter of law. Tenn. R. Evid. 606(b); *Walsh*, 166 S.W.3d at 647; *see also Caldararo*, 794 S.W.2d at 741. However, Tenn. R. Evid. 606(b) provides for three exceptions, or questions before the court, on which a juror may testify:

[1.] whether extraneous prejudicial information was improperly brought to the jury's attention,
[2.] whether any outside influence was improperly brought to bear upon any juror, or
[3.] whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion. . . .

Internal matters, including "intra-jury pressure or intimidation," "do not involve extraneous information or outside influence." *Gibson v. Chrysler Corp.*, No. W2002-03134-COA-R3-CV, 2004 WL 1918725, at *5 (Tenn. Ct. App. W.S., Aug. 26, 2004) (citing *State v. Hailey*, 658 S.W.2d 547, 553 (Tenn. Ct. App. 1983)).

In this case, the trial court reviewed Ms. Markley's testimony and concluded that the "pressure or threats were placed on her by another juror within the confines of the jury's deliberations." Ms. Markley testified that another juror pressured her to hurry in making her decision. This juror was verbally abusive and threw paper at Ms. Markley. The only outside incident to which Ms. Markley testified was her own fear the next day when she was driving her car. The trial court was correct in concluding that "the type of pressure testified to by Ms. Markley does not constitute improper outside pressure" and does not fall under one of

the three exceptions to Tenn. R. Evid. 606(b).

## B. ADMISSION OF JUROR'S TESTIMONY

After concluding that the events related by Ms. Markley did not constitute one of the exceptions allowed under Tenn. R. Evid. 606(b), the trial court still evaluated Ms. Markley's testimony and concluded that she "was paralyzed by a significant state of fear that led to her acquiescing to the verdict." The court found that "[t]o allow the jury's verdict to stand would allow violence to prevail over the free will of the jury's role." Ms. Gaines acknowledges that in order to uphold the trial court's ruling, this court would have to "recognize an exception for violent acts that occur during deliberations." Putting aside the arguable question of whether the juror's conduct in this case constituted violence, we decline to extend the exceptions enumerated in Rule 606(b) beyond those adopted by the Tennessee Supreme Court in *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn. 1984) (adopting Fed. R. Evid. 606(b), now embodied as Tenn. R. Evid. 606(b)). *See Walsh*, 166 S.W.3d at 646.[3]

We hold that the trial court's admission of Ms. Markley's post-trial deposition testimony was clear error because, as a description of what took place during deliberations, the testimony was inadmissible under Tenn. R. Evid. 606(b). The trial court was understandably concerned to find that one juror had been intimidated by another and had perceived a threat of violence. Responding to this concern, the trial court concluded that intra-jury intimidation had "resulted in there being no free exchange of ideas or evaluation of the evidence." However, Rule 606(b) was actually designed to preserve the free exchange of ideas during deliberations. *Walsh*, 166 S.W.3d at 646 ("[T]he overarching purpose of both the federal and Tennessee Rule 606(b) is to protect the integrity of the jury's deliberative process."). Rule 606(b) strikes a balance between public policies of "protect[ing] the litigants from verdicts tainted by extraneous prejudicial information or outside influence" and simultaneously "insur[ing] that jurors will not be guarded in their deliberations for fear of later scrutiny by others." *Id.* at 646 n.2 (quoting *Caldararo*, 794 S.W.2d at 741). An extension of the exceptions allowed under Rule 606(b) is beyond the scope of this Court's

---

[3]The Tennessee Supreme Court has also ruled that there is no exception under Tenn. R. Evid. 606(b) that allows for a juror's testimony in response to an inquiry concerning "jurors' thought processes and motivations during deliberations." *Walsh*, 166 S.W.3d at 649. This is true even when the jurors' thought processes are in response to one of the three exceptional situations enumerated in Rule 606(b). *Id.* ("[W]e hold that Tennessee Rule of Evidence 606(b) permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible."). Thus, the portion of Ms. Markley's testimony concerning what led her to decide with the majority during deliberation would be inadmissible even if her decision had been the result of improper outside influence.

review, and moreover, would open the sanctity of the jury deliberation process to unwarranted post-trial investigation.

## C. MOTION FOR A NEW TRIAL

The trial court granted Ms. Gaines's motion for a new trial based on Ms. Markley's testimony concerning jury deliberations with no other evidence offered. Parties moving for a new trial must establish evidence supporting the motion that is both relevant and admissible. *Caldararo*, 794 S.W.2d at 741. Concluding that Ms. Markley's testimony was inadmissable under Tenn. R. Evid. 606(b), we also hold that the trial court erred in granting the motion for a new trial.

## IV. CONCLUSION

The trial court erred in granting the motion for a new trial because the only evidence presented was a juror's deposition that did not fall within the three exceptions to exclusion of juror testimony in Tenn. R. Evid. 606(b). The order for new trial is reversed and this action remanded for enforcement of the judgment originally entered on the verdict of the jury in the first trial. The costs on appeal are assessed against Appellee, Linda Kay Gaines.

_____
**JOHN W. McCLARTY, JUDGE**