# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1998

FILED

April 23, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9702-CR-00054 |
| | ) | |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. SETH NORMAN, JUDGE |
| WILLIE B. JACKSON, | ) | |
| | ) | (SALE OF CONTROLLED |
| Appellant. | ) | SUBSTANCE - COCAINE) |


FOR THE APPELLANT:                    FOR THE APPELLEE:

**MARK J. FISHBURN**                  **JOHN KNOX WALKUP**
100 Thompson Lane                     Attorney General & Reporter
Nashville, TN  37211

                                      **LISA A. NAYLOR**
                                      Assistant Attorney General
                                      2nd Floor, Cordell Hull Building
                                      425 Fifth Avenue North
                                      Nashville, TN  37243

                                      **VICTOR S. JOHNSON, III**
                                      District Attorney General

                                      **JIM MILAM**
                                      Assistant District Attorney General
                                      Washington Square
                                      222 Second Avenue North, Suite 500
                                      Nashville, TN  37201-1649


OPINION FILED _____

AFFIRMED IN PART; REVERSED IN PART

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Willie Bruce Jackson, appeals as of right from his conviction following a jury trial in the Criminal Court of Davidson County. In the original indictment, Defendant was charged with seven (7) drug-related offenses committed during the period of August through October of 1993. At the conclusion of the State's proof, Count 2 of the indictment was dismissed. Defendant was convicted of the following drug-related offenses:

1) Sale of twenty-six (26) grams or more of a substance containing cocaine (Count 1);

2) Sale of twenty-six (26) grams or more of a substance containing cocaine (Count 3);

3) Sale of .5 grams or more of a substance containing cocaine (Count 7);

4) Delivery of .5 grams or more of a substance containing cocaine (Count 8).

The jury found the Defendant not guilty of two of the named offenses in the indictment (Counts 5 and 6). The trial court sentenced the Defendant to an eight (8) year sentence for each charge, to be served concurrently in the Department of Correction. Defendant presents the following issues in his appeal:

1) Whether the evidence was sufficient to justify the jury's verdict of guilt beyond a reasonable doubt.

2) Whether the jury was prejudiced by the introduction of extraneous legal information during deliberations;

3) Whether the trial court erred in denying Defendant's request for a special jury instruction on the "procuring agent" defense;

4) Whether the trial court erred by failing to merge counts 7 and 8 of the indictment, the sale and delivery of .5 grams or more of a substance containing cocaine, in violation of the Double Jeopardy clause of the Fifth Amendment;

5)  Whether the trial court erred in allowing inculpatory information which was not provided as discovery materials prior to trial to be admitted into evidence.

We reverse in part and affirm in part the judgments of the trial court.

SUFFICIENCY OF THE EVIDENCE

Defendant states in his brief that there was no evidence introduced that he actually shared in the proceeds from the sale of the cocaine on any occasion. Defendant asserts that the uncorroborated testimony of an accomplice, Rodney Morris, was the only evidence that Defendant was the source of the cocaine sold on October 27, 1993, and that is insufficient to support his convictions.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are

resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Joanne Schuler, Special Agent with the Tennessee Bureau of Investigation ("TBI"), testified that in 1993 she was assigned to the drug section of the TBI. A confidential informant, Ron Darks, approached Schuler regarding the Defendant's drug activity. Based upon that information, Schuler began an investigation. Initially, Schuler went to 2126 Cliff Drive, the area where Darks described that Defendant lived, and saw a blue Toyota Celica, the vehicle that Darks described Defendant as driving. After confirming the initial information provided by Darks, Schuler met with Darks to set up contact with Defendant to purchase cocaine from him.

Schuler's plan was to contact Defendant through his beeper number, 748-7962, from a telephone and that further arrangements would then be made. A micro cassette recorder was set up in advance to monitor the telephone conversation between Darks and the Defendant. On August 17, 1993, after placing the page to Defendant's beeper number, the telephone rang and they were instructed to go to a telephone at a fish market in Bordeaux in Davidson County. Darks was searched for any drugs or contraband, then he and Schuler went to the fish market. After they arrived, Darks used the telephone Defendant specified and again paged Defendant. Within a short time, the telephone rang and Darks answered. Several minutes after that phone call, a blue Toyota Celica was seen being driven from Cliff Drive towards Schuler and Darks. This appeared to be the same Celica that Schuler observed

earlier at 2126 Cliff Drive. Two black males were in the Celica, and they parked in the parking lot of a little market on the other side of Clarksville Highway. One of the men exited the car, and Darks identified him as "Motor." Motor got into their car and put a small clear plastic baggie with a whitish substance on the car's console. Darks began to count out twelve hundred dollars ($1,200.00) which Schuler had previously given to him. Motor then asked to be driven across the street and dropped off near a white Cutlass which was parked next to the Celica. Schuler then took the cocaine to the TBI for testing.

On August 23, 1993, Schuler and Darks went to a pay phone and placed a page to number 271-8314. The page was returned, and Schuler recorded the telephone conversation. Darks was instructed to return to the same telephone that they had used on August 17 at the fish market on Clarksville Highway. Schuler placed three pages, and shortly thereafter the Celica was seen being driven towards the fish market. The driver of the Celica parked in the lot across the street from where Schuler and Darks were parked, and a black male exited the car and entered the market. Shortly thereafter, the telephone rang and Darks was instructed to go to the market next to where the Celica was parked. After they entered the market, Darks went to the back and Defendant was standing inside the door of a back room. Schuler attempted to follow Darks into the room, but Darks informed her that she was not to come any further. The door closed briefly, then Darks reopened the door and asked Schuler for the money. Schuler gave Darks one thousand dollars ($1,000.00) and then he closed the door. When the door reopened several seconds later, Schuler saw Defendant standing in essentially the same spot he had been initially and then Darks exited the back room. As soon as Schuler and Darks left the

market and got into their vehicle, Darks handed Schuler another clear plastic baggie containing a white substance.

On September 27, 1993, Schuler placed a page to pager number 271-8314 from the phone in the parking lot of the market where their last deal had taken place. When the page was returned, Schuler identified herself as Joanne and indicated that she was calling to get an ounce of cocaine. Schuler identified the voice of the person who returned the page as Defendant. She then drove over to the fish market across the street and waited until she saw the blue Celica arrive. Two black males were in the Celica, and they pulled up near her car. A young black male came over to Schuler's car, and she later learned that this person was Rodney Morris. Morris came to her window and she asked him how much it was. Morris said the ounce would be eleven hundred dollars ($1100.00). After Schuler gave him the money, he gave her a baggie containing a whitish substance.

On October 27, 1993, Schuler planned to purchase a quarter of an ounce of cocaine. Darks placed a call to pager number 271-8314, and Schuler monitored the call. Schuler recorded the returned phone call, and identified the voice as the Defendant's. Darks asked "Is this Ookie or Roger," and the Defendant replied, "It's Ookie." Defendant advised them to stay at the same phone and that he would call back. When Defendant called back, Darks was instructed to drive to a nearby car wash and that the price of the cocaine would be two hundred seventy-five dollars ($275.00). When Schuler and Darks arrived at the car wash, there was a black male there cleaning a brown Mustang. Darks identified him as Rodney Morris. After they parked in one of the bays, Morris came up to the passenger side window and confirmed the price of the cocaine. The exchange was made.

Phillip Freeze, drug analyst for the TBI, testified that he performed a chemical analysis of the substances which Schuler turned in as evidence from the sales involving the Defendant. Freeze stated that the analysis of the first sample revealed 26.3 grams of cocaine, approximately nine-tenths of an ounce. The chemical analysis of a second sample revealed 27.3 grams of a cocaine powder. The third sample contained 16 grams of cocaine following a chemical analysis.

Ronald Darks testified that he served as a confidential informant to the TBI during their investigation of the Defendant. He stated that he knew the Defendant as "Ookie." Darks supplied the TBI with the information surrounding Defendant's address and the vehicles he drove. On August 17, 1993, he and Schuler used the pager number Defendant had given to him and the Defendant returned their page. Defendant told Darks to meet him at a fish market on Clarksville Highway. After Darks arrived there, he called Defendant to let him know that they had arrived and Defendant told them to wait there. Darks saw the Celica approach, and another man got out of the Celica and walked to their car with the drugs. This was the same Celica that Darks had identified before as Defendant's vehicle.

On August 23, 1993, Darks again placed a phone call to Defendant, and Darks and Schuler went to the spot where Defendant asked to meet them. Because there were some police officers present near the scene, Defendant called Darks back and told him to come to the market across the street from the fish market. Schuler and Darks crossed the street, parked the car and went inside the market to the back room. Because Defendant did not want anyone to come into the room except Darks, Darks refused to let Schuler in the back room. While Darks was in the room alone with Defendant, Darks handed Defendant the money and Defendant

handed Darks the cocaine. As soon as Darks and Schuler went back outside, Darks gave the cocaine to Schuler.

On September 27, 1993, Darks made a telephone call from work to Defendant's pager number to set up an exchange for Schuler to make on her own. Darks reached the Defendant and Defendant instructed that Schuler should call him when she got to the fish market. Darks was not involved further in the September 27 transaction. On October 27, 1993, Darks again assisted Schuler in setting up a drug buy from the Defendant. As a result of that telephone call, Defendant told Darks to meet him at the car wash on Clarksville Highway. Rather than Defendant meeting them at the car wash, Rodney Morris was there for the drug exchange. Darks stated that the only way that Morris could have known to go the car wash with the drugs was if the Defendant had instructed him to go there. Darks listened to the audio recordings of the various phone calls he and Schuler had made to set up the drug buys, and identified the voice of the Defendant on the August 17, August 23, and October 27 tape recordings. During the taped conversation of October 27, Darks recalled that he asked the caller, "Who is this, Ookie or Roger?" The person replied that he was "Ookie," and Darks identified the Defendant as "Ookie." Defendant instructed Darks on that day to "let [him] call Rodney first." Darks confirmed that the person who delivered the cocaine that day was Rodney Morris.

Randall Kirk Nelson, forensic scientist for the TBI, analyzed one of the samples provided by Schuler. That sample tested as eighty-three percent (83%) cocaine, with a weight of 28.2 grams.

Ron Gaskins, Special Agent with the TBI, assisted with surveillance for Agent Schuler. On August 17, 1993, Gaskins set up surveillance on Clarksville Highway and monitored a transmitter worn by the confidential informant, Darks. Gaskins also made a tape recording of the transaction that took place between the Defendant and Darks. On September 27, 1993, Gaskins performed similar surveillance on Clarksville Highway, monitored the transaction and also made a tape recording.

Maxey Gilleland, agent of the Middle Tennessee Drug Enforcement team of the TBI, assisted in providing surveillance to Agent Schuler on August 23 and October 27, 1993. On August 17, Gilleland monitored the transactions and attempted to take photographs of the blue Celica. Gilleland was able to photograph one of the suspects involved in the transaction. Gilleland identified the Defendant as one of the suspects he saw that day.

Chris Regg, Office Administrator at Mobile Com, a mobile telephone and pager service, testified that Willie Jackson, the Defendant, was a customer of Mobile Com for pager number 748-7962. This number was assigned on December 30, 1992, and the service expired on August 18, 1993. The contract was with Willie Jackson, of "2126 Cliff Drive, Apartment B, Nashville, Tennessee 37208."

Rodney Morris, a co-defendant in this case, testified that he pled guilty to four (4) counts of selling cocaine. Morris came to know Defendant as he was a neighbor to Defendant on Cliff Drive. Morris also knew the Defendant by his nickname, "Ookie." On September 27, 1993, Morris stated that he drove a blue Celica to make a drug exchange with Schuler and that Defendant was in the car with him while Morris swapped the drugs for money. Defendant was the person whom Schuler had

talked with on the telephone to set up the drug buy and Defendant told Morris that Schuler was the one who was supposed to get the drugs. Morris stated that he would not have known to go exchange the drugs for money with Schuler unless Defendant had told him what kind of car Schuler would be driving and that she wanted to buy an ounce of cocaine. Morris stated that it was Defendant's cocaine that he was taking to Schuler, and that the eleven hundred dollars ($1,100.00) he received for it from Schuler was given to Defendant.

On October 27, 1993, Morris went alone to meet Schuler at a car wash on Clarksville Highway. Morris was wearing Defendant's pager that day, and Darks paged him. Morris called Darks and told him where Defendant was. Defendant then called Morris and told him the specifics of the meeting at the car wash. After Morris met Schuler and Darks at the car wash and performed the exchange, Morris returned the money he received to Defendant. Morris described the blue Toyota Celica as being owned by Defendant.

The Defendant presented two witnesses on his behalf. Reggie Reed testified that he knew both the Defendant and Rodney Morris. In 1993, Reed owned a beeper from A-Plus Communications, but he did not need it due to his travel schedule and loaned it to Morris. The number assigned to that beeper was 271-8314.

Joanne Schuler was also called to testify for the Defendant. Schuler testified that on December 10, 1993, when she made the arrest of Morris and Wiley, three (3) vehicles were confiscated. All three (3) of these vehicles were believed to be involved in the drug transactions. The first vehicle was a 1987 blue Toyota Celica,

and the Certificate of Title for that Celica is made out to Kimberly F. Bailey. The other two (2) vehicles which were confiscated had persons other than the Defendant listed as the owner on the Certificates of Title.

On cross-examination, Schuler stated that eight (8) photographs were found in the Toyota Celica. Some of these photographs were pictures of Bailey, the owner listed on the Certificate of Title, and the Defendant together, with writing on the back stating, "To Ookie, Kim, with love from Papa." A number of personal documents were also found in the Toyota Celica which belonged to the Defendant. These documents included a social security card, an insurance card, a speeding citation and a phone card in the name of Willie Jackson. A state hunting license was also found in the vehicle, and it was issued to Willie Jackson at 2126 Cliff Drive in Nashville.

It is an offense for a person to knowingly deliver or sell a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2) and (3). The offense is committed "knowingly" if the person acts with respect to the conduct or circumstances surrounding the conduct with awareness of the nature of the conduct or that the circumstances exist. Tenn. Code Ann. § 39-11-302(b). If the person is aware that the conduct is reasonably certain to cause the result, that person has acted knowingly. Id.

Joanne Schuler testified that on August 17, 1993, she and a confidential informant, Ron Darks, paged a number that Defendant had provided to Darks. Defendant responded shortly thereafter with instructions for exchanging cocaine for their cash. After Schuler and Darks had parked their car at the fish market where Defendant told them to wait, a blue Toyota Celica arrived from Cliff Drive. Schuler

had previously confirmed that the Defendant lived at 2126 Cliff Drive and that a blue Toyota Celica was parked by that address. Darks testified that he spoke with Defendant regarding the drug buy on the telephone, and that shortly thereafter a blue Toyota Celica arrived with two men inside. One man approached Darks with the cocaine and exchanged it for money. Testimony confirmed that the substance given to Schuler and Darks was, in fact, cocaine.

On August 23, 1993, Schuler and Darks again paged the Defendant. This conversation was recorded, and Darks confirmed that the Defendant was the one speaking on the recording. During this conversation, Defendant again instructed Darks to wait at the fish market. Eventually, Defendant told Darks to come inside a market across the street and enter the back room. Darks testified that Defendant was the one in the back room who gave him the cocaine in exchange for money. This substance was also confirmed to be cocaine.

On October 27, 1993, Darks again assisted Schuler in setting up a drug buy from the Defendant. Darks called Defendant, and Darks was instructed to meet Defendant at the car wash on Clarksville Highway. During their phone conversation, which was also recorded, Darks specifically asked, "Is this Ookie or Roger?" Defendant responded that he was Ookie. Several witnesses verified that the Defendant's nickname was Ookie. Darks went to the car wash where a person named Rodney Morris, a co-defendant, met him with cocaine in exchange for money. This substance was confirmed to be cocaine.

While Defendant urges that the uncorroborated confession of a co-defendant is not sufficient evidence for the convictions, there is more than sufficient evidence

in the light most favorable to the state whereby a rational trier of fact could have found the Defendant guilty of these offenses. There must be some fact testified to entirely independent of an accomplice's testimony, and that fact must lead to an inference that a crime has been committed and that the defendant is responsible therefore. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460, 463 (1963). In addition to the testimony of Morris, the co-defendant, TBI Agent Schuler and Darks both testified regarding the drug purchases from the Defendant. Furthermore, both recordings and surveillance of the transactions identified the Defendant as committing the crimes charged. As the corroborative evidence fairly and legitimately tends to connect the accused with the commission of the crimes charged, then sufficient independent facts lead to the inference that Defendant is responsible for the commission of these drug offenses. See Marshall v. State, 497 S.W.2d 761, 765-66 (Tenn. Crim. App. 1973). This issue is without merit.

EXTRANEOUS INFORMATION AND PREJUDICE TO THE JURY

Defendant argues that the jury was prejudicially influenced due to the introduction of extraneous information to the jurors during their deliberations. Specifically, the Defendant cites a letter from a juror which refers to legal definitions provided to the jury by another juror on the issues of "agent, selling and delivery." Defendant contends that these definitions were relied upon by the jury during its deliberations as supplemental to and in lieu of the trial court's charge to the jury.

The standard with respect to the admissibility of juror testimony in any form when the validity of the jury verdict is challenged is found in Rule 606(b) of the Tennessee Rules of Evidence. The admissibility standard is as follows:

> Upon an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a _juror_ _may_ _testify_ on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Tenn. R. Evid. 606(b) (emphasis added).

The definition of "delivery" was provided to the jury by the trial court during its charge to the jury. At the hearing on the motion for new trial, the letter from one of the jurors, Debbie Thomas, was entered as an exhibit. The letter described to the court that after a period of deliberating, the jury returned to the trial court to inquire as to the definitions of the words "sale" and "delivery." The trial court referred the jury to its original charge for the definition of "delivery" and then proceeded to read the definition of "sale" from a commonly used dictionary. The jury did not reach a verdict that day, and they were allowed to retire for the evening and to return the next morning to continue their deliberations. Thomas' letter states that upon their return, the jury foreperson came in and had "written down definitions" for the words "agent, selling and delivery" which were copied out of a business law book the jury foreperson had at home. Thomas described the definitions as referencing examples of people selling pizza and that this information was heavily relied upon by the jury.

Extraneous information is information from a source outside the jury. Caldararo v. Vanderbilt University, 794 S.W.2d 738, 742 (Tenn. App. 1990) (citations omitted). During oral arguments in this court, the State conceded that the information provided to the jury regarding the definitions of "agent, selling and delivery" was extraneous information. We agree, but now must determine whether such extraneous information was prejudicial to the Defendant.

In construing Rule 606(b), after proof that a juror has received extraneous information, there arises a rebuttable presumption of prejudice, and the burden then shifts to the prosecution to explain the conduct or to demonstrate the harmlessness of it. State v. Young, 866 S.W.2d 194, 196 (Tenn. Crim. App. 1992). No prior case has addressed the issue of prejudice based upon these exact circumstances, but similar cases have been decided based upon extraneous information and its effect upon the jury. See, e.g., Young, 866 S.W.2d at 197 (Tenn. Crim. App. 1992); Caldararo; 794 S.W.2d at 743.

In Caldararo, the court held that one juror's generalized knowledge and extraneous information on the subject of diabetes was not the type of extraneous information which requires a verdict to be overturned. Id., 794 S.W.2d at 743-44. The court noted that this information did not indicate any prior or extraneous information regarding the parties or the events which gave rise to the case at hand. Id. at 744. Similar to Caldararo, this juror's knowledge regarding the definitions of "agent, selling and delivery" was not the type of extraneous information to constitute prejudice to the Defendant. None of the extraneous information was regarding the Defendant or other parties involved in the drug transactions. The term "agent" was not in issue regarding the above convictions, so an assertion of any prejudice due

-15-

to the definition of this word is without merit. The jurors in the case <u>sub judice</u> were properly admonished to base their verdict upon the evidence and the trial court's instructions. As the trial court provided an instruction for both the terms of "sale" and "delivery," we must presume that the jury followed the trial court's instructions. <u>State v. Blackman</u>, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985).

In <u>Young</u>, a panel of this court found that after an evidentiary hearing, the trial court was in the best position to make the determination of whether the defendant was prejudiced. <u>Id</u>. at 196. The trial court in the case <u>sub judice</u> found that the evidence of Defendant's guilt was overwhelming, and the findings of fact made by the trial court after an evidentiary hearing are afforded the weight of a jury verdict unless the evidence contained in the record preponderates against his findings. <u>Young</u>, 866 S.W.2d at 197, *citing* <u>State v. Killebrew</u>, 760 S.W.2d 228 (Tenn. Crim. App. 1988). We are satisfied that the trial court reached the proper findings, and any error was harmless in that the proof does not indicate the degree of prejudice necessary to overturn a verdict.

JURY INSTRUCTIONS AND PROCURING AGENT

Defendant argues that the trial court's refusal to charge the jury on the "procuring agent" defense was prejudicial error. At the close of the proof, the Defendant filed a request for the trial court to charge the jury on the defense of "procuring agent." The motion was denied and the charge was not included in the jury instructions.

The "procuring agent" defense is a viable defense to charges of selling a controlled substance. State v. Baldwin, 867 S.W.2d 358, 360 (Tenn. Crim. App. 1993). If the facts in this case are susceptible of inferring that Defendant could be viewed as a procuring agent, then the instruction should have been given. See Mitchell v. Smith, 779 S.W.2d 384, 390 (Tenn. App. 1989).

The evidence at trial showed that on August 17, 1993, Darks, the confidential informant, paged the number Defendant had provided him and spoke to the Defendant regarding the sale of an ounce of cocaine. Defendant arranged the location of the sale, and Agent Gilleland of the TBI identified Defendant as one of the suspects he monitored at that location. On August 23, 1993, Darks paged Defendant, and Defendant again instructed Darks on where to meet him to exchange the money for cocaine. When Defendant arrived, he directed Darks to a back room in a market and made the actual exchange there with Darks. On October 27, 1993, Darks paged Defendant, and Defendant returned the call. When Darks questioned Defendant as to his identity, Defendant confirmed his identification by his nickname "Ookie." Defendant instructed Darks on where the drug sale should take place, and when Defendant went to the car wash as instructed, an agent of the Defendant's was there and provided Defendant with the cocaine. This agent, Rodney Morris, testified at trial that he was directed by Defendant to meet Darks with the drugs and that he returned the money he received for the drugs from Darks back to the Defendant.

Under the particular facts of this case, any claimed error in not instructing the jury about a "procuring agent" is without merit. A person acting as an agent may use the procuring agent defense if the defendant did not sell the substance, received no

benefit from the transaction, and if the defendant was in no way interested in the transaction. See Baldwin, 867 S.W.2d at 359. This issue is without merit.

DOUBLE JEOPARDY

Defendant argues that the trial court erred in allowing the jury to deliberate and ultimately convict him of both the sale and the delivery of cocaine arising out of one transaction on October 27, 1993. Defendant contends that multiple convictions arising out of a singular course of conduct can only occur if each of the criminal statutes charged requires proof of an additional fact or element which is not found in the other. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

Three fundamental principles underlie double jeopardy: "(1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citations omitted). The case sub judice involves multiple punishments for the "same" offense. In determining whether two offenses are the "same" for double jeopardy purposes, the Blockburger test applies:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

Blockburger, 284 U.S. at 307, 52 S.Ct. at 182, 76 L.Ed. at 306; State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975).

-18-

In addition to the Blockburger test, the trial court must consider the "same evidence" test, that is whether the same evidence is required to prove the offenses. Denton, 938 S.W.2d at 381, *citing* Duchac v. State, 505 S.W.2d 237, 239 (Tenn. 1973). Finally, the trial court must analyze whether there were multiple victims or discrete acts and compare the purposes of the respective statutes. Denton, 938 S.W.2d at 381.

After an analysis of the above principles to the evidence and facts of this case, we find that the two separate convictions regarding the drug transaction on October 27, 1993 constitute double jeopardy. Defendant may only be convicted of one offense, either the "sale" or the "delivery" of cocaine on October 27, 1993. It is an offense for a person to knowingly deliver or sell a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2) and (3). Under Blockburger, the offense in question involves two (2) separate subsections of Tennessee Code Annotated section 39-17-417(a). The Sentencing Commission Comments to Tennessee Code Annotated section 39-17-417 provide that, "[T]he commission wished to make it clear that each of these acts was a separate offense and therefore listed the manufacture, delivery, sale or possession with intent to manufacture, deliver or sell each as a separate subsection." While both convictions are valid under Blockburger, the "same evidence" test under Duchac reveals that in order to convict the Defendant for the delivery of the cocaine on October 27, the same evidence is necessary for the conviction for the sale of the cocaine. Because the Defendant did not deliver the cocaine himself, but sent his co-defendant to deliver the cocaine and then return the money from Darks and Schuler, the evidence necessary to convict the Defendant of the sale is also necessary to convict him of the delivery of cocaine. Because

these convictions fail the Duchac prong of the test for double jeopardy, our analysis need not go further.

The conviction for delivery of cocaine is merged with the conviction for the sale of cocaine on October 27, 1993.

INCULPATORY EVIDENCE

Defendant argues that the trial court erred by allowing the State to introduce evidence which was not provided to the Defendant prior to trial as discovery material pursuant to Rule 16(a)(1)(C) of the Tennessee Rules of Criminal Procedure. During the Defendant's proof, the Defendant called Agent Schuler of the TBI as a witness to testify regarding the three (3) vehicles which were confiscated at the time of the arrests. Defendant sought to establish that these three (3) vehicles were not owned by the Defendant. During cross-examination by the State of Agent Schuler, the State introduced, over objection by Defendant's trial counsel, various tangible documents and objects which were found in these three (3) vehicles.

> The rule regarding discovery material is as follows:
>
> Upon request of the Defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs . . . which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense . . . or were obtained from or belong to the defendant.

Tenn. R. Crim. P. 16(a)(1)(C).

The trial court allowed the evidence to be admitted on the basis that it was inculpatory, that Defendant opened the door for its admission by calling Agent Schuler as a witness, and because the State did not seek to introduce the items as

-20-

evidence during its case-in-chief. The items included eight (8) photographs, the Defendant's insurance card, a speeding ticket issued to the Defendant, Defendant's phone card, social security card and hunting license. Prior to trial, Defendant did request the disclosure of any discovery material pursuant to Rule 16.

During oral arguments in this court, the State conceded that such evidence was indeed within the parameters of discovery material and should have been provided to Defendant and his trial counsel prior to trial. While we do conclude that it was error for the State to fail to allow the Defendant to inspect these items pursuant to his discovery request, the Defendant has failed to demonstrate prejudice, and thus any such error is harmless beyond a reasonable doubt. See Tenn. R. Crim. P. 52(a). The evidence of Defendant's guilt is overwhelming. Testimony of three separate witnesses, including a TBI agent, confidential informant and co-defendant, confirmed Defendant's presence in the Toyota Celica and that the Toyota Celica was used by the Defendant long before Defendant's personal possessions from the car were admitted into evidence. Therefore, in the context of the entire record, the violation does not affect the judgment or result in prejudice to the judicial process, and any error by the trial court was harmless. Tenn. R. App. P. 36(b).

After a thorough review of the record, the briefs and the law applicable to the case sub judice, we affirm in part and reverse in part the judgments of the trial court. Defendant's conviction for the delivery of cocaine on October 27, 1993 is merged with the conviction for the sale of cocaine on October 27, 1993. In all other respects, the judgments are affirmed.

_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
JOHN H. PEAY, Judge


_____
DAVID H. WELLES, Judge