NATIONAL LIFE & ACCIDENT INS. CO. v. YATES et al.

Western Section. March 24, 1933.

Judgment Affirmed by Supreme Court, October, 1933.

Exby, Moriarty & Pierce, of Memphis, for appellant.
Chandler, Shepherd & Owen, of Memphis, for appellee.

SENTER, J. This litigation involves the proceeds of two policies of life insurance aggregating the sum of $664, issued by complainant, National Life & Accident Insurance Company, on the life of Autry Yates, and payable to Ethel Yates, who was designated as the wife of Autry Yates. Upon the death of Autry Yates, his mother, Lillie Yates, qualified as the administratrix of his estate, and as such administratrix made claim to the proceeds of the policy, as did also

Ethel Yates, the named beneficiary. Because of the conflict between the respective claimants, the National Life & Accident Insurance Company filed its bill of interpleader in the chancery court of Shelby county. Whereupon Lillie Yates, as the administratrix, filed an intervening petition, and Ethel Yates, the named beneficiary, answered the bill and petition, and each claimed to be entitled to receive the proceeds of the two policies.

The mother, the administratrix, by her petition and answer, alleged that Ethel Yates was not the lawful wife of Autry Yates; that she had never been married to Autry Yates; that she lived illicitly with Autry Yates for several years; and that she had a living husband from whom she had not been divorced. She alleged that Ethel Yates became enamored of one Alfred Knowlton, and began a series of clandestine and illicit assignations with him; that, after she had succeeded in effecting insurance on the life of the said Autry Yates, she and the said Alfred Knowlton conspired together to kill the said Autry Yates; and that, in pursuance of said design, the said Ethel and Knowlton, while together in an automobile, waylaid the said Autry Yates; and that said Knowlton, in keeping with said plan and conspiracy, shot and fatally wounded the said Autry Yates.

Ethel Yates answered the intervening petition, and denied the material allegations.

The cause was heard before the chancellor and a jury. There was but one issue of fact submitted to the jury, viz.: "Did Ethel Hoosman, also known as Ethel Yates, conspire with one Alfred Knowlton to kill the said Autry Yates?" To this issue the jury answered, "Yes."

There was a motion for a new trial by Ethel Yates to set aside the findings of the jury and to grant to her a new trial on the issues submitted to the jury, which motion was by the court overruled and disallowed, and a decree rendered in favor of Lillie Yates, administratrix of the estate of Autry Yates, entitling her to the proceeds of the two policies of insurance, and directing that the proceeds of same which had previously been paid into court be paid over to said Lillie Yates, less the sum of $35 allowed and ordered paid out of said fund to the solicitors of the National Life & Accident Insurance Company.

From this decree the defendant, Ethel Yates, prayed and was granted an appeal to this court, and has assigned six errors. By the first assignment it is said that there is no evidence to support the verdict. By the second assignment it is said that the verdict is against the weight and preponderance of the evidence. The third assignment is directed to the action of the court in refusing to grant appellant's motion for a directed verdict. The fourth assignment is directed to the action of the court in refusing to permit Ethel Yates to testify on certain subjects. This assignment cannot be considered

because it does not comply with the rules of this court, and it does not seem to be insisted upon by appellant in her brief. The fifth assignment charges error by the court in a portion of the charge to the jury. The sixth assignment is directed to the action of the court in refusing to give in charge to the jury the special request No. 1 tendered by appellant.

The second assignment of error cannot be considered by this court on appeal because this court will not weigh the evidence to determine the preponderance. The first and third assignments will be considered together. By these assignments it is contended that there was no material evidence to be submitted to the jury, and no evidence to support the verdict of the jury.

It appears from the record that appellant had been living illicitly with Autry Yates for some time, and he held her out to the public as his wife, and lived with her in the home of his mother, claiming to be married to her. He took the two policies of life insurance upon his life, and named Ethel Yates as the beneficiary and as his wife. It appears that Ethel, while living with Autry Yates, began meeting Alfred Knowlton secretly and clandestinely, secretly calling him over the telephone, and was frequently in his company. Shortly before his death, Autry left Memphis to work in Nashville, Tennessee. He was a brick mason. He was expected back home in a few days. Ethel knew of his intention to return to Memphis within a few days. By the evidence of several witnesses it was shown that on the night of the killing Knowlton took Ethel in his automobile to her sister's house in Memphis. When she and Knowlton arrived there, according to her evidence, she found Autry's car at the door. There is evidence in the record that Knowlton, with Ethel in the car with him, was pursuing or chasing Autry Yates, that Yates' car was in advance or the front, and that Knowlton crowded him to the side of the street, and shot him, fatally wounding him. Ethel claims to have gotten out of the automobile some several blocks before the shooting occurred, but the decided weight of the evidence is that she was in the automobile with Knowlton sitting by his side at the time Knowlton crowded Yates to the side of the street and shot him. There is evidence by an eyewitness that the woman in the car with Knowlton leaned back so that Knowlton could shoot in front of her. Another significant fact is that, after Yates had been taken to the hospital, Ethel went to the home of his mother and did not mention the shooting, and, when shortly thereafter, the mother was notified, Ethel and Yates' mother went to the hospital, and, when the mother was inquiring of her son who shot him and why, he replied, in the presence of Ethel, that Knowlton had shot him and that Ethel knew all about it, and asked that she be taken from the room, saying that he never wanted to see her again. She made no reply and no denial at that time.

It is the contention of appellant that the mere presence of one at

the scene of the crime does not constitute any evidence of a conspiracy, and numerous cases, both state and federal, are cited in support of that proposition. We suppose all authority is in accord with the general statement that the mere presence of one accused of a conspiracy to commit an assault is insufficient to sustain a conviction. There must be facts or circumstances tending to show that there was a preconcerted plan or design to commit the assault. Autry v. Coffman, 6 Cold. (46 Tenn.), 510; Green v. U. S. (C. C. A.), 8 Fed. (2d), 140, 141; Haning v. U. S. (C. C. A.), 21 Fed. (2d), 508; Stafford et al. v. U. S. (C. C. A.), 300 Fed., 537; State v. King, 104 Iowa, 727, 74 N. W., 691.

However, when we consider all the facts and circumstances as disclosed by the record, it cannot be said that appellant was merely present, and in no way encouraging the assault. We think that there is some evidence to warrant the conclusion that appellant had become tired of Yates, and suggested that he take out insurance on his life, naming her as beneficiary, and that she was then carrying on an affair with Knowlton, and that she had become greatly enamored with Knowlton. She was seeing him secretly and clandestinely. There is some evidence that she was somewhat jealous. She knew when Yates was returning from Nashville. She had been out with Knowlton the night before. She also arranged for him to meet her on the night of the killing, and by prearrangement was with Knowlton on the night of the killing, and in his automobile. There is evidence that Knowlton was pursuing Yates in his automobile, and that he crowded Yates into the gutter. There is evidence that appellant was in the automobile with Knowlton all the time he was engaged in the chase, and in the car with Knowlton at the time Knowlton fired the fatal shot. She made no outcry at the time, and did not give Yates any warning. There is evidence that just before Knowlton fired she leaned back in the car, and that Yates fired the pistol from in front of her. She made no effort to prevent him from shooting. When we consider the relation that existed between the parties, and the evident motive both she and Knowlton had in killing Yates, and all of the other facts and circumstances, we are constrained to reach the conclusion that there is some evidence to support the verdict. If there is any material evidence to support a jury verdict, concurred in by the trial judge, it will not be disturbed by an appellate court. If there was any material evidence to support the verdict, it was not error to deny the motion for a directed verdict.

It results that the first, second, third, and fourth assignments are overruled.

The fifth assignment challenges the following portion of the charge of the court to the jury on the subject of a conspiracy:

"So, in this case. I charge you that it is not required that Lillie Yates shall prove the existence of a conspiracy to kill Autry Yates by direct and positive proof, or that those who are alleged to have

conspired together actually agreed in terms to commit the unlawful act, but it is sufficient to prove it by circumstantial evidence, and if you believe from all the facts and circumstances proven in the case that the said Ethel Yates and Alfred Knowlton did conspire together to bring about the death of Autry Yates, then, it will be your duty to answer this issue, 'Yes.' ''

The criticism made by appellant of the above portion of the charge is that it is not required that Lillie Yates prove that those who are alleged to have conspired together actually agreed in terms to commit the unlawful act. This contention is evidently predicated upon the language of the court that it ''is not required that Lillie Yates shall prove the existence of the conspiracy to kill Autry Yates by direct and positive proof, or that those who are alleged to have conspired together actually agreed in terms to commit the unlawful act,'' but it is to be observed that the court immediately follows that language by the statement, ''but it is sufficient to prove it by circumstantial evidence.'' This is the clear meaning of the charge. The court had already defined the word ''conspire'' in the charge immediately preceding the portion complained of and in which he stated to the jury: ''It is proper in this connection that I should define for you the meaning of the word 'conspire' in this connection. The word has here its usual and natural meaning. It is simply to enter into a conspiracy or combination or agreement between two or more persons to accomplish by concerted action a criminal or unlawful purpose.'' The court then charged the jury that such a conspiracy could be proved either by direct evidence or circumstantial evidence. When taken as a whole, we think the court fairly and correctly charged the law on the subject.

The special request tendered by the defendant and refused by the trial judge was sufficiently covered by the general charge, and the general charge was a more accurate statement of the law on the subject than was the special request tendered.

It follows that we find no error, and the decree of the chancellor is accordingly affirmed. The appeal is on the pauper's oath, and appellant will pay the cost of this appeal.

Heiskell and Anderson, JJ., concur.