AFFIRM; Opinion issued October 16, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-00845-CR

## MICHAEL M. LOYA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 354th Judicial District Court
### Hunt County, Texas
### Trial Court Cause No. 26052

# OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Fillmore

A jury found appellant Michael M. Loya guilty of aggravated sexual assault of a child under six years of age at the time of the offense and assessed punishment of twenty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.021(f)(1) (West Supp. 2012). In four points of error on appeal, Loya contends he received ineffective assistance of counsel; the trial court erred by admitting the complainant's out-of-court statement to a forensic interviewer because the forensic interviewer was not a proper outcry witness; the trial court erred by admitting the testimony of the Sexual Assault Nurse Examiner (SANE), and the Sexual Assault Forensic Examination Form (SAFE Form), because they contained inadmissible hearsay; and the trial court erred by admitting the Psychotherapy Treatment Summary (Treatment Summary) of the complainant's play therapist

because it contained inadmissible hearsay statements made by the complainant. We affirm the trial court's judgment.

## Procedural Background

Loya was indicted on three counts of aggravated sexual assault of a child under six years of age. The three counts were consolidated and tried before a jury in one proceeding. The jury found Loya guilty of one count that was alleged to have occurred on November 1, 2007, and assessed punishment of twenty-five years' imprisonment.[1] Loya filed this appeal of his conviction.

## Factual Background[2]

L.M. was born in 2002. Lisa Knight, L.M.'s biological mother, was married to Loya from 2003 to 2007. L.M. never knew her biological father. She grew up believing Loya was her father, and she called Loya "daddy." Lisa and Loya had a daughter, S.L., born during their marriage. Loya and Lisa were divorced in May 2007, with a child custody agreement that awarded Lisa possession of S.L. and awarded Loya standard visitation. On the weekends of Loya's visitation, L.M. and S.L. stayed at Loya's residence, which witnesses sometimes referred to as the "shop." Although Loya had no legal rights to L.M., Lisa thought it was in L.M.'s best interest for L.M. to continue to have a relationship with the only father figure she had ever known.

L.M. testified she understood the trial was taking place because Loya did something bad to her and she was there to talk about that. She testified she no longer went to Loya's residence because

---

[1] The jury acquitted Loya of the charges of aggravated sexual assault of a child under six years of age that were alleged to have occurred on October 1, 2007 and October 15, 2007.

[2] Loya does not contest sufficiency of the evidence to support his conviction. Therefore, we recite only the facts necessary to address Loya's complaints on appeal.

he did something bad to her. The first person she told about what Loya had done to her was her mother, Lisa; she told Lisa right away. L.M. told Lisa that Loya "licked [her] hiney."[3] This happened on the couch in Loya's shop on one of L.M.'s weekend visits. When asked how many times Loya "licked [her] hiney," L.M. testified she thought Loya had done it three times, but she did not know if he had done it more times. She "felt it" about three times.

Lisa testified that, after L.M. returned home from a weekend at Loya's residence in November 2007, L.M. asked Lisa if it was okay for daddy to lick her hiney. When Lisa asked what she meant by "hiney," L.M. pointed to her vagina. Lisa asked if Loya had done that to L.M., and L.M. responded that he had. L.M. said it happened in Loya's shop. Lisa testified that L.M. explained Loya would get her out of bed and put her on the couch and lick her hiney.

Lisa telephoned Loya to confront him about what L.M. had told her. Loya denied the allegation. After speaking to Loya on the telephone, Lisa questioned L.M. about what she had said and told L.M. that what she had said was serious. L.M. said she was just kidding, and L.M. would not discuss it further at that time. The next day, Lisa telephoned Loya and told him she was worried about L.M. and wanted to take her to a counselor. However, Lisa testified she gave Loya the benefit of the doubt as to the allegation L.M. had made, and she did not take L.M. to a counselor or contact Child Protective Services (CPS) at that time.

L.M. and S.L. continued their visits at Loya's residence until sometime in early July 2008. In July 2008, after L.M.'s last visit to Loya's residence, Lisa watched a television talk show about sexual abuse. The contents caused Lisa to impress upon L.M. that she could tell Lisa the truth and

---

[3] L.M. testified her "hiney" and her "private" meant the same thing.

that Lisa would believe her. L.M. asked Lisa if she meant "like when daddy licked my hiney?" L.M. then told Lisa "almost verbatim" the same thing she had told Lisa in November 2007 concerning Loya licking her hiney.

On the advice of a friend who was a social worker, Lisa contacted CPS. L.M. was interviewed as part of the CPS investigation. However, during the forensic interview, L.M. did not repeat what she had told Lisa regarding the alleged sexual assault. CPS was not able to determine the alleged sexual assault had occurred, and CPS closed its file on the alleged sexual assault.

In mid-July 2008, Lisa hired an attorney "to keep her daughters safe." On July 18, 2008, Lisa's attorney filed a Suit Affecting the Parent-Child Relationship (SAPCR) to seek a change of the custody agreement in the divorce from Loya. *See* TEX. FAM. CODE ANN. § 101.032(a) (West 2008). In the SAPCR, Lisa's attorney also filed for and obtained a temporary restraining order preventing Loya from seeing S.L.[4] According to Lisa, she sought a restraining order to keep Loya from seeing S.L. "because he molested [L.M.]."

In August 2008, Lisa took L.M. to counseling with a child play therapist, Sadi Monge. Lisa sought therapy to help L.M. deal with all the changes in her life, such as not seeing Loya, Lisa's divorce from Loya, as well as the alleged sexual abuse. L.M. testified Monge helped her express her feelings, and she could talk to Monge concerning things that made her nervous. Through January 2010, Monge conducted thirty-five to forty play therapy sessions with L.M. Monge completed a Treatment Summary on July 6, 2009, which included the following notation regarding Monge's twentieth therapy session with L.M.: "In January 2009 during regular weekly session client made

---

[4] Later in the SAPCR, the trial court allowed Loya to have supervised visitation of S.L.

outcry to therapist describing former stepfather licking her private parts. Outcry reported to CPS on January 22, 2009 as well as informed mother."

Lisa testified that on February 5, 2009, she called 9-1-1 regarding the sexual abuse allegations L.M. had made, because CPS had not done anything to help L.M. in the initial investigation. Following the 9-1-1 call, Joel Gibson, an investigator with the Hunt County Sheriff's Office, opened an investigation, and the Child Advocacy Center was contacted to conduct a forensic interview of L.M.

On February 17, 2009, Holly Robinson of the Child Advocacy Center conducted a forensic interview of L.M. In the forensic interview, L.M. said her dad licked her and that it had happened at her dad's house. L.M. talked about two instances of her dad licking her hiney. The first time, she had on pajamas that had depictions of cupcakes, and her dad took her pajama bottoms off. L.M. said she was asleep. L.M. indicated to Robinson that her dad's tongue touched her vaginal area; L.M. referred to her vaginal area as her hiney. She said she thought her dad was cleaning the toilet paper out of her hiney with his tongue. L.M. said her clothes were wet when her dad carried her back to bed. At trial, L.M. testified she told Robinson "what had happened," and Robinson helped her with "the problem of that."

After completion of Robinson's forensic interview of L.M., a sexual assault examination of L.M. was performed by the SANE, Linda Bell, a registered nurse. L.M. testified that, after she saw Robinson, she had a "medical exam on [her] private," and she told Nurse Bell what she had told Robinson and Monge. L.M. testified she told Nurse Bell what Loya had done to her.

Nurse Bell testified that the medical history L.M. provided to her was that L.M. "had her hiney licked" when she was staying with her dad. L.M. told Nurse Bell that she was visiting her dad for two days and "he licked me two days." Nurse Bell completed and signed a SAFE Form which included Nurse Bell's impressions from the exam to be "[s]exual contact by history." The "[p]atient's description of pertinent details of the assault" was: "My dad licked me on one of my private parts. And that was all he did. I was asleep. I guess when I was asleep he decided 'lets just lick her hiney.' I was just visiting 2 days, he licked me 2 days. Mikee Loya, he was my dad."

### Ineffective Assistance of Counsel

In Loya's first point of error, he contends he received ineffective assistance of counsel because trial counsel failed to object to L.M.'s July 2008 second outcry statement to Lisa regarding the alleged sexual abuse.[5] Loya also contends his trial counsel's performance was deficient because he failed to "re-lodge" an objection before the jury heard the testimony of Nurse Bell and failed to make an objection before the admission in evidence of the SAFE Form.[6]

To be entitled to a new trial based on an ineffective assistance of counsel claim, a defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009); *see also Riley v. State*, No. PD-1531-11, 2012 WL 4092874, at *1 n.5 (Tex. Crim. App. Sept. 19, 2012) (Texas adopted the *Strickland* standard in *Hernandez v. State*, 726 S.W.2d 53,

---

[5] On appeal, Loya concedes that L.M.'s November 2007 statement to Lisa regarding the alleged sexual abuse was a proper outcry statement by L.M. and was made in accordance with requirements of article 38.072 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2011).

[6] Loya's contentions in his third point of error that the trial court erred in admitting the testimony of Nurse Bell and the State's Exhibit 8, the SAFE Form, into evidence are discussed below.

57 (Tex. Crim. App. 1986)). The first prong of *Strickland* requires the defendant to show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88, 689; *Ex parte Lane*, 303 S.W.3d at 707. The second prong requires the defendant to show there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694; *Ex parte Lane*, 303 S.W.3d at 707. A defendant's failure to satisfy one prong negates the need to consider the other prong. *Strickland*, 466 U.S. at 697; *Ex parte Lane*, 303 S.W.3d at 707.

Our review of counsel's performance is highly deferential and begins with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and we do not judge counsel's actions in hindsight. *See Strickland*, 466 U.S. at 689; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The fact that another attorney might have pursued a different tactic at trial is not sufficient to prove counsel was ineffective. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004).

We commonly assume a strategic motive if any can be imagined and conclude counsel's performance was deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101. An ineffective assistance claim must be "firmly founded in the record," and the record must affirmatively demonstrate that the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App.), *cert. denied*, 131 S. Ct. 3073 (2011) ("Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be

overcome absent evidence in the record of the attorney's reasons for his conduct."). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008); *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Further, counsel should ordinarily be accorded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *Rylander*, 101 S.W.3d at 111; *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Because the reasonableness of counsel's choices often involve facts that do not appear in the appellate record, an application for writ of habeas corpus is generally the more appropriate vehicle to raise ineffective assistance of counsel claims. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Loya's defense at trial was that Lisa had a motive to fabricate the allegations of sexual abuse and induce L.M. to believe they had occurred or coach L.M. to recount false allegations of sexual abuse. Loya argued Lisa feared that if Loya was aware another man, Sheldon Knight, was living with her after February 2007, or that she had married Sheldon in June 2008, Loya would seek custody of S.L. Loya's defense was that the timing of the allegations of sexual assault of a child, following Loya's move to Richardson, Texas, in May 2008, and Lisa's marriage to Sheldon in June 2008, were directly related to Lisa's fears that Loya would attempt to gain custody of S.L., that Lisa could lose the child support she was receiving from Loya, and that Loya could seek child support from Lisa. Accordingly, we can imagine a trial strategy under which Loya's counsel would choose not to object to the admission of L.M.'s second outcry to Lisa in July 2008, the testimony of Nurse Bell regarding the February 2009 sexual assault examination of L.M., or the SAFE Form generated

in conjunction with that sexual assault examination, because the evidence relates to matters remote in time from the November 2007 initial outcry.

Here, the record is silent as to counsel's actual strategy or reasoning. Although Loya filed a motion for new trial, he did not raise the issue of ineffective assistance of counsel in the motion. Consequently, Loya's trial counsel has not been given an opportunity to explain his actions in failing to object to the complained-about evidence. *See Rylander*, 101 S.W.3d at 110–11 (in most cases, a silent record will not overcome the strong presumption of counsel's reasonable assistance). Loya has not shown that this is one of those extraordinary situations in which the face of the record shows counsel's challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Thompson*, 9 S.W.3d at 814); *see also Ingham v. State*, 679 S.W.2d 503, 508 (Tex. Crim. App. 1984) (concluding failure to object to every instance of improper evidence does not constitute ineffective assistance).

We conclude Loya has not met his burden of showing that trial counsel's performance fell below an objective standard of reasonableness. *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) ("The record in this case is insufficient to support the conclusion [that appellant received ineffective assistance of counsel] because appellant did not develop a record in the trial court for the purpose of establishing this claim.").[7] We resolve Loya's first point of error against him.

---

[7] Having concluded Loya failed to show his trial counsel's performance fell below an objective standard of reasonableness, we need not address the second prong of *Strickland* that, but for his counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687. We note, however, that the jury found Loya not guilty on two of the three aggravated assault charges, and the jury assessed the minimum punishment for the aggravated assault on which it found Loya guilty. *See Ex parte Lane*, 303 S.W.3d at 707 (in determining whether appellant met his burden, we consider the totality of the representation and the particular circumstances of the case).

## Admission in Evidence of Child's Statement to Forensic Interviewer

In his second point of error, Loya asserts the trial court abused its discretion by admitting into evidence L.M.'s statement to the forensic interviewer, Holly Robinson, because Robinson was not a proper outcry witness. Loya argues Robinson was not the first person to whom L.M. made her outcry statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(3) (West Supp. 2011) (before a witness can qualify as a proper outcry witness, the person must have been the first person to whom the victim made statements about the offense). The State contends Robinson was a proper outcry witness because L.M.'s statement to Robinson was the first outcry about multiple instances of abuse.

Absent an abuse of discretion, we will not disturb a trial court's decision to admit evidence. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *See Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

At trial, Loya did not contest the admission in evidence of L.M.'s November 2007 outcry statement to Lisa. The trial court conducted a hearing outside the presence of the jury to determine whether there was a second outcry by L.M. to Robinson. Loya objected to Robinson's testimony regarding L.M.'s purported second outcry in February 2009. The trial court reviewed Robinson's February 2009 video and audio taped forensic interview of L.M. The trial court found that L.M.'s first outcry was to Lisa in November 2007 regarding one incident of alleged sexual abuse, and L.M.'s interview with Robinson suggested multiple incidents of alleged sexual abuse. Therefore,

the trial court found Robinson was a proper outcry witness.[8]

There may be more than one outcry witness provided the witnesses testify about different events. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see also Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd) ("Because of the way in which [article 38.072] is written, an outcry witness is not person-specific, but event-specific. Before more than one outcry witness may testify, however, the outcry must be about different events, and not simply a repetition of the same event related by the victim to different individuals."). Lisa, the first outcry witness, testified to L.M.'s statement to her in November 2007 that Loya licked her hiney. L.M.'s statement to Lisa in November 2007 referenced a single event. According to Lisa's testimony, in July 2008, L.M. again told her mother "almost verbatim" about the same event of alleged sexual abuse that L.M. originally described to Lisa in November 2007. However, in L.M.'s statements to Robinson in February 2009, L.M. talked about two instances of alleged sexual assault by Loya.

The trial court has broad discretion in determining the proper outcry witness, and its determination will not be disturbed absent an abuse of discretion. *See Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (citing *Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd)). We cannot conclude the trial court abused its discretion in allowing Robinson's testimony before the jury regarding L.M.'s second outcry statement.

We note that even if we assume, *arguendo*, Robinson's testimony was not proper outcry testimony, the admission of that evidence was harmless. The admission of inadmissible hearsay

---

[8] "When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence is admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections." TEX. R. EVID. 103(a)(1).

constitutes nonconstitutional error and will be considered harmless if, after examining the record as a whole, the appellate court is reasonably assured the error did not influence the jury verdict or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Likewise, the admission of evidence is harmless where the same evidence came in elsewhere without objection. *Lane v. State*, 151 S.W.3d 188, 192–93 (Tex. Crim. App. 2004). The court of criminal appeals recently reiterated that "erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see also Leday*, 983 S.W.2d at 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

Here, L.M. testified without objection to the abuse by Loya on multiple occasions. In addition, as is discussed below with regard to Loya's third point of error, evidence regarding L.M.'s statements that Loya sexually assaulted her on two occasions came into evidence without objection through the testimony of Nurse Bell and the SAFE Form. With this evidence reflected in the record other times, we have fair assurance that the assumed error did not influence the jury, or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). Accordingly, we conclude the purported error was harmless. *See Broderick*, 35 S.W.3d at 75 (when the same evidence comes in elsewhere without objection, no harm arises).

Having concluded the trial court's decision to admit into evidence Robinson's testimony as to L.M.'s statements to her during the forensic interview was not an abuse of discretion, and, if

error, was harmless, we resolve Loya's second point of error against him.

**Admission in Evidence of the SANE's Testimony and the SAFE Form**

Loya contends in his third point of error that the trial court erred in admitting the testimony of Nurse Bell and State's Exhibit 8, the SAFE Form, into evidence. Loya contends Nurse Bell's testimony and the SAFE Form contained inadmissible hearsay statements by L.M.

*The SAFE Form*

The State offered the SAFE Form into evidence as a business record. After Loya's counsel affirmatively stated there was "no objection," the trial court admitted the SAFE Form. Loya's asserted error on appeal with regard to the trial court's admission of the SAFE Form was not preserved for our review. *See* TEX. R. APP. P. 33.1(a) (providing that to preserve error for appellate review, a party must make a timely and sufficiently explicit request, objection, or motion in the trial court); *Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005) (to preserve error, the record must show (a) appellant made a timely and specific request, objection, or motion; and (b) the trial court either ruled or refused to rule and the complaining party objected to the refusal).

*Testimony of Nurse Bell*

Outside the presence of the jury, the State sought to establish admissibility of the testimony of Nurse Bell relating to statements made to her by L.M. concerning the alleged sexual assaults by Loya. The State argued L.M.'s statements to Nurse Bell related to L.M.'s medical history and were made in the context of a sexual assault examination. Accordingly, the State argued Nurse Bell's

testimony was an exception to hearsay under rule of evidence 803(4).[9] Loya objected to admission of Nurse Bell's testimony under rule of evidence 803(4), arguing that statements made by L.M. during the February 2009 sexual assault examination were too remote in time from the alleged sexual assault to be considered "statements made for purposes of medical diagnosis or treatment." *See* TEX. R. EVID. 803(4). The trial court overruled Loya's objection.

On appeal, Loya asserts the trial court abused its discretion by admitting Nurse Bell's testimony as to L.M.'s statements, because "there was no showing that the child had been truthful as required by the medical diagnosis exception to the hearsay rule." However, this is not the objection Loya made to admission of Nurse Bell's testimony at the hearing before the trial judge outside the presence of the jury.

The objection made at trial must comport with the error raised on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993). A careful review of the record establishes that Loya's asserted error on appeal with regard to the trial court's admission of Nurse Bell's testimony regarding L.M.'s statements made as part of the sexual assault examination medical history was not preserved for our review.

Having concluded error, if any, in admission into evidence of the testimony of the SANE and the SAFE Form was waived, we resolve Loya's third point of error against him.

### Admission of the Play Therapist's Treatment Summary Into Evidence

In Loya's fourth point of error, he contends the trial court erred in admitting into evidence

---

[9] Rule of evidence 803(4) provides an exception to hearsay for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." TEX. R. EVID. 803(4).

State's Exhibit 11, Monge's Treatment Summary, because it contained inadmissible hearsay statements L.M. made to Monge.

Outside the presence of the jury, the trial court considered the admissibility of the Treatment Summary. Loya objected to the Treatment Summary on the basis that it contained L.M.'s hearsay statements. The State argued the document was admissible under the medical-diagnosis-or-treatment exception to hearsay under rule of evidence 803(4). *See* TEX. R. EVID. 803(4). The State also sought admission into evidence of the Treatment Summary under the business record exception to the hearsay rule. *See* TEX. R. EVID. 803(6). Loya affirmatively stated he did not oppose admission of the Treatment Summary in evidence as a business record. The trial court admitted the Treatment Summary as a business record. However, Loya maintained his hearsay objection to the Treatment Summary, and the trial court granted Loya a running objection to L.M.'s hearsay statement to Monge contained in the Treatment Summary. *See Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008) (party must object each time inadmissible evidence is offered unless the party obtains a running objection or a ruling on his complaint in a hearing outside the presence of the jury).

Assuming, without deciding, that the trial court abused its discretion in admitting the Treatment Summary in evidence, any such error was harmless. As is discussed more fully above with regard to Loya's second and third points of error, evidence of L.M.'s statements concerning the alleged sexual abuse, which are substantially the same as statements attributed to L.M. in the Treatment Summary, had been admitted numerous times during trial prior to admission of the Treatment Summary through the testimony of L.M., Lisa, and Nurse Bell and admission of the SAFE Form. *See Coble*, 330 S.W.3d at 282 (erroneously admitting evidence will not result in reversal

–15–

when other such evidence was received without objection, either before or after the complained-of ruling); *Lane*, 151 S.W.3d at 193 (admission of evidence is harmless where the same evidence came in elsewhere without objection).

Having concluded that error, if any, in admitting the Treatment Summary, was harmless, we resolve Loya's fourth point of error against him.

## Conclusion

Having resolved Loya's points of error against him, we affirm the trial court's judgment.

_____

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

110845F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL M. LOYA, Appellant

No. 05-11-00845-CR        V.

THE STATE OF TEXAS, Appellee

Appeal from the 354th Judicial District
Court of Hunt County, Texas. (Tr.Ct.No.
Cause No. 26052).
Opinion delivered by Justice Fillmore,
Justices Moseley and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered October 16, 2012.


_____
ROBERT M. FILLMORE
JUSTICE